## UNITED STATES *v.* BIGGS.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 289. Argued December 16, 17, 1908.—Decided January 4, 1909.

*United States* v. *Keitel, ante,* p. 370, followed as to the power of this court to review judgments in criminal cases at the instance of the Government under the act of March 2, 1907, c. 2546, 34 Stat. 1246.

The timber and stone act of June 3, 1878, c. 151, 20 Stat. 89, as amended by the act of August 4, 1892, c. 375, § 2, 27 Stat. 348,[1] while prohibiting the entryman from entering ostensibly for himself but in reality for another, does not prohibit him from selling his claim to another after application and before final action. *Williamson* v. *United States,* 207 U. S. 425.

An indictment for conspiracy to defraud the United States by improperly obtaining title to public lands will not lie under § 5440, Rev. Stat., where the only acts charged were permissible under the land laws.

When this court in affirming a judgment in a criminal case under the act of March 2, 1907, c. 2546, 34 Stat. 1246, has decided on a broad ground that the Government cannot prosecute the case, it is not necessary for it to decide the other questions involved which thereby become irrelevant.[2]

157 Fed. Rep. 264, affirmed.

___

[1] For an abstract of the timber and stone act see note in *Williamson* v. *United States,* 207 U. S. 425, 455.

[2] The point not passed on was, as stated in the syllabus of the opinion in the case below: An indictment under Rev. Stat. § 5440 for conspiracy to defraud the United States, which sets out a number of overt acts on different dates, is either bad for duplicity, as charging more than one conspiracy, or if held to charge a single continuing conspiracy, the offense was consummated when the first overt act was committed, and from that date the statute of limitations began to run.

THE facts are stated in the opinion.

*The Attorney General* and *The Solicitor General*, with whom *Mr. Edwin W. Lawrence*, Special Assistant to the Attorney General, was on the brief for the United States:

Here, as in the coal land cases, the argument is that the court below merely held that the facts charged in the indictment were not within the statute, and therefore the indictment and not the statute was interpreted or construed. That contention, the court in those cases held to be devoid of all merit. *United States* v. *Keitel, ante,* p. 370.

As the court below in construing the indictment really construed the law and merely applied that construction to the indictment, it seems proper for the Government to discuss the indictment in the light of its language as drawn from the law itself, notwithstanding this court held in the *Keitel case* that, on such a writ of error, it has not jurisdiction to consider alleged defects in the indictment or misconstruction of the indictment irrespective of construction of the statute.

"To enter" in the third section of the law refers to final proofs and payment, but "make entries" in the indictments is not to be so construed. The word "entry" often refers to the filing of the inceptive right as in the early case of *Chotard* v. *Pope,* 12 Wheat. 586. That is the popular sense as shown by the dictionaries, but the technical meaning includes the proceedings as a whole and the complete transfer of title. *Dealy* v. *United States,* 152 U. S. 539, 544, 545; *Hastings &c. R. R.* v. *Whitney,* 132 U. S. 357, 363.

"To obtain" lands signifies similarly the complete process of acquisition, and since the indictment, following the law, describes these lands as "open to entry," the charge includes the initial application. In *Adams* v. *Church,* 193 U. S. 516, referring to the timber culture law, the meaning attached to *entry* is the original application, the court using the language, "after entry and before final proof." And under this very law in *Williamson* v. *United States* the court uses the

term in precisely the same sense, viz.: "in the interim between entry and final proof." 207 U. S. 461.

The indictments sufficiently charge a conspiracy to defraud, although the conspiracy did not embrace the making of false and fraudulent applications.

The timber and stone act restricts the quantity of timber land to be sold to 160 acres to any one person or association of persons. A corporation could not, without violating the law, step into the shoes of the various applicants and in its own name take the steps which the law requires for completion of the entries. But this is what the indictments charge that the defendants conspired to do, except that it is alleged that they planned that the applicants should complete the entries without disclosing the interest of the corporation. The applicants would be acting merely as the agents of the corporation, and in each case the sale would be made by the United States to the corporation and not to the entrymen. This is not a *bona fide* contract by an entryman to convey after patent. The *Williamson case* can be distinguished. See *United States* v. *Budd*, 144 U. S. 154; *United States* v. *Trinidad Coal Co.*, 137 U. S. 160.

The coal land statutes did not require the applicant to make an affidavit at entry that he was purchasing solely for his own benefit; neither does the timber and stone act require such an affidavit to be made at the time the lands are *purchased* from the United States. Both statutes prohibit the acquisition from the United States by one person of more than a certain quantity of land. The plan carried out by the Trinidad Coal Company was held fraudulent because the company did indirectly what it could not do directly. This is exactly what the defendants in the present cases are charged with. The end, fraud, being unlawful, it was unnecessary to set out in detail the indirect means contemplated by the conspiracies. *Dealy* v. *United States*, 152 U. S. 539, 543; *Burton* v. *United States*, 202 U. S. 344; *Thomas* v. *United States*, 156 Fed. Rep. 897; *United States* v. *Grunberg*, 131 Fed. Rep.

137; *Thomas* v. *People*, 113 Illinois, 131; *People* v. *Bird*, 126 Michigan, 631.

If there ever was a rule that the statute of limitations begins to run as soon as the first overt act in pursuance of a conspiracy has been committed and in three years thereafter the bar is complete, it has been entirely superseded by the rule that the crime consists in putting a corrupt agreement into operation, and the limitation runs from the date of the last overt act committed for the purpose of effecting the object of the conspiracy. The question is whether the conspiracy is in existence, and overt acts of individual conspirators committed within the period of the statute are evidence of a renewal and continuance of the conspiracy. *Ware* v. *United States*, 154 Fed. Rep. 577, and cases cited. At least four cases involving this point have recently been brought before the court on petition for certiorari, and the petitions have been denied. *Lorenz* v. *United States*, 196 U. S. 640; *Bradford* v. *United States*, 206 U. S. 563; *Ware* v. *United States*, 207 U. S. 588; *Jones* v. *United States*, this term, *post.*

All that was decided in *Adams* v. *Church* and *Williamson* v. *United States* touching the point in the present case was that an entryman has the right to dispose of his holding acquired in good faith before the final certificate. No question was involved in either case of the acreage restriction in the timber culture law and this law, respectively, or of the right of a purchaser to *buy*. It was determined that the entryman had the right to *sell*. An entryman's right to sell *ad interim* depends upon his good faith, and he is bound in good faith to disclose his principal, although it may not be criminal for him not to do so or even to swear to the contrary. A purchaser cannot legally buy in the interim between application and final proof, that is, before title has been acquired from the United States, if he has already bought one tract. He is a disqualified purchaser. Entrymen who are not themselves conspirators and who are acting separately are nevertheless the agents, although unconscious and innocent, it may be,

of an undisclosed principal. The Government is not prosecuting the entrymen but the conscious agents of the principal conspiring to violate the law and evading its prohibition by procuring from the United States indirectly through the entrymen more land than the principal could buy directly. If the *Williamson case* means that title vests in the entryman as soon as he makes preliminary application, and that a purchaser in the interim before final proof would be buying from him and not from the United States, just as much as after final proof and payment or after patent, then indeed it is conclusive against the Government here, and there is no violation of law, for the law does not mean what it seems to mean by its acreage restriction. Otherwise this scheme is a fraud, because it is sought to obtain lands from the United States indirectly in violation of law, just as much as the scheme in the *Trinidad case*, or in the *Keitel case*, or the *Forrester case*, which is said by the court not to be distinguishable from the *Keitel case* as involving a violation of the coal land law.

Unless there is less meaning and force in the prohibition of the timber and stone law than in the prohibition of the coal land law, and unless there is some difference which we do not perceive between the interim status of an entryman here and the status of a preference entryman in the corresponding interval under the coal land law, this case is not distinguishable from the case of the coal preference entries (the *Forrester case*), and if the *Williamson case* does not rule that case, neither does it rule this.

*Mr. Charles J. Hughes* and *Mr. Clyde C. Dawson* for defendants in error:

This court is without jurisdiction of these writs of error under the act of March 2, 1907:

Because neither § 5440 nor the timber and stone act were held invalid; nor were either of said statutes the subject of construction by the District Court; nor can the jurisdiction of this court be sustained under the clause of the act of March 2,

1907, relating to judgments sustaining "a special plea in bar," for neither a "special plea in bar" nor a judgment sustaining a "special plea in bar" appear in the records.

No offense is charged in the indictments.

There are many "laws" of the United States under which timber lands may be entered. There is only one of those laws which indicates any policy of the Government restricting the amount of land which may be entered by any one individual or corporation. These indictments charge conspiracy to procure the entering of lands under some of these laws, but do not in any manner allege that this conspiracy was a conspiracy to procure entries under the one law which restricts the amount that can be entered. The defendants are entitled to the presumption that their combination was one to procure entries under the laws which do not so restrict the area of entry, and not under the law which does so restrict it.

And, therefore, these indictments do not charge any attempt to "defraud the United States in any manner for any purpose."

Under the restrictive law to which we have referred, the only thing which the Congress of the United States attempted to prevent is the making of contracts, before the making of applications to purchase, whereby the entryman binds himself to convey the title which he shall acquire from the Government to some other person.

It must be presumed that the intent of the entrymen was innocent, and that they did not conspire to make these contracts of conveyance at any time when the laws of the United States, as interpreted by its Supreme Court, prohibited such action. *Williamson* v. *United States,* 207 U. S. 425.

The only point where any representation in regard to such agreements of conveyance is required, is at the making of the application; that is to say, when the first application is made to the officers of the Government.

To "defraud the United States" a false representation of some fact is necessary, and these indictments show no con-

spiracy to procure the making of any representations by any person whatsoever. It is only by the most violent presumption that such conclusions can be reached from the allegations of these indictments. In the absence of such affirmative allegations the defendants are entitled to the presumption that they did not conspire to procure the making of any false representations whatsoever, or any representation at a time when the same would be false, and hence did not conspire to "defraud the United States" in any manner or for any purpose.

The making of false representations, if alleged, in violation of a Land Department regulation imposing on the entryman a condition not contained in the law, would constitute no offense. *Williamson* v. *United States, supra.*

If such regulation exists it has not been pleaded, and hence cannot be relied upon. *United States* v. *Bedgood,* 49 Fed. Rep. 54; *United States* v. *Eaton,* 144 U. S. 677, 687, 688; *United States* v. *Maid,* 116 Fed. Rep. 650; *United States* v. *Blassingame,* 116 Fed. Rep. 654; *Anchor* v. *Howe,* 50 Fed. Rep. 366; *United States* v. *Howard,* 37 Fed. Rep. 666; *Hoover* v. *Salling,* 110 Fed. Rep. 43; *United States* v. *Manion,* 44 Fed. Rep. 801; *United States* v. *Hoover,* 133 Fed. Rep. 950; *United States* v. *Matthews,* 146 Fed. Rep. 306; *United States* v. *United Verde Copper Co.,* 196 U. S. 207; *Williamson* v. *United States,* 207 U. S. 425.

Conclusions of law and of the pleader and not facts are pleaded.

References to the overt acts are necessary in order to determine definitely the conspiracy charged.

There is no certainty of allegation as to the time of the alleged offense conspired to be accomplished.

There is no allegation that the defendants conspired to defraud the United States.

The overt acts, alleged in each indictment, show on their face that no one of them was done in pursuance of the conspiracies charged nor to effect the object of the same, and

hence in failing to charge an overt act to effect the object of
the conspiracies the indictments fail to charge a crime.

MR. JUSTICE WHITE delivered the opinion of the court.

It is adequate to an understanding of the questions which
are here necessary to be decided in general terms to say that
the indictment against the defendants in error charged them
with conspiracy in violation of the second clause of § 5440;
Rev. Stat., which makes it criminal to conspire to defraud the
United States "in any manner or for any purpose." The
means by which it was contemplated that the United States
should be defrauded was charged in the indictment to have
been the unlawful obtaining by purchase under the timber
and stone act of public land of the United States in excess of
the quantity authorized by law to be acquired. The timber
and stone act when originally enacted in June, 1878, related
solely to public lands within particular States. 20 Stat. c.
151, 89. In 1892, however, that act was amended by strik-
ing out the designation of particular States, thus causing the
act to apply to "surveyed public lands of the United States
within the public land States." 27 Stat. c. 375, 348. As
it is essential to have that act in mind we excerpt from the
opinion of the court below a succinct but comprehensive and
accurate statement of its provisions:

"This act in its first section specifies the qualifications of
purchasers or entrymen thereunder, and limits the amount
of land which each may acquire to one hundred and sixty
acres. The second section provides that the applicant, at
the time of his application, shall file a written statement in
duplicate under oath with the register, describing the land
which he desires to purchase and its quality, that he has
made no other application under this act, and that he does not
apply to purchase the same on speculation, but in good faith
to appropriate it to his own exclusive use and benefit, and
that he has not, directly or indirectly, made any agreement or

contract in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person except himself. It then provides that if he swears falsely he shall be guilty of perjury and forfeit the money which he paid for said lands, and all right and title to the same, and any grant or convey- ance which he may have made, except in the hands of *bona fide* purchasers, shall be null and void. The third section provides that on the filing of the applicant's statement the register shall post a notice of the application in his office for a period of sixty days, and that the applicant shall publish the same notice in a newspaper nearest the location of the premises for a like period of time, and after the expiration of said sixty days, if no adverse claim shall have been filed, the party desiring to purchase shall furnish to the register of the land office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements, etc., etc., and upon payment to the proper officer of the purchase money of said land, together with the fees of the register and receiver, etc., etc., the applicant may be permitted to enter said land, and a patent shall issue thereon. It further provides that any person having a valid claim to any portion of the land may object in writing to the issuance of the patent, and evidence shall be taken thereon as to the merits of said objection."

The indictment contained one count, supported by averments of fourteen overt acts.

The accused after moving to quash on the ground of the illegality of the organization of the grand jury, demurred to the indictment on a number of technical grounds, and upon the contentions that the facts stated in the indictment were insufficient to charge an offense within any statute of the United States, and that as the indictment had not been found

within three years of the commission of the acts therein
alleged, the right to prosecute for the same was barred by
the statute of limitations. The court held the indictment
stated no offense against the United States, and, sustaining
the demurrer upon that ground, discharged the accused
without date. It was also held that if the indictment was
construed as embracing but one offense, the three years' bar
of the statute of limitations was controlling, but that if it
were held that the indictment stated more than one offense,
thus saving one of the offenses from the operation of the
statute of limitations, the indictment would be void for
duplicity.

The reasons which caused the court to reach the conclusions
just stated were expounded in an opinion. Therein, in order
to determine whether the indictment stated an offense against
the United States, the court came first to construe it in the
light of the provisions of the timber and stone act. In doing
so the court said:

"We find that the indictment sets in where the second
section of the timber and stone act leaves off. It charges
that the purpose of the conspiracy was to 'hire and under
agreements' with entrymen have them pay for the lands with
moneys of the corporation and have them make entries. It
does not charge the date on which such hiring and agreements
to make entries were to be made, nor that the entrymen were
hired to make applications, nor that said hiring and agreements
were prior to any application. The indictment appears to
attempt to challenge some acts done by the entrymen under
the provisions of section 3 of said act, to wit: The hiring of
and agreement with entrymen (who had made application be-
fore that under section 2 of the act) to make entries and pay for
the land with moneys furnished by the corporation. . . .
But it is said the indictment charges a violation of section 1 of
the act in the acquisition of more land by the corporation than
there limited. When it comes to that the indictment does not
charge that the several entrymen were disqualified as such,

nor that when they made application they had outstanding contracts to sell, or were then acting under agreements or hire for said defendants or said corporation. A compliance with the timber and stone act, by the entrymen, in both its spirit and letter, prior to and at time of application is not challenged by the indictment."

Having thus construed the indictment it was then considered whether any offense was therein stated against the United States. In deciding that no offense was stated it was held that although it were conceded that the timber and stone act prohibited an entryman or applicant from making an application ostensibly in his own name, but in reality for and on behalf of another, that if an applicant or entryman made an application in good faith for his own exclusive use and benefit the statute contained no prohibition, express or implied, against the right of the entryman, after his application and before the final action thereon, to sell to another the claim to the land which had arisen from his application. It was therefore decided that such applicant was at liberty to contract with another to convey the land covered by the application and to perfect his entry for the purpose of fulfilling his contract to convey the land after patent. In reaching this conclusion the court was controlled by the decision in *Adams* v. *Church*, 193 U. S. 510, giving a like construction to the timber culture act of June 14, 1878, c. 190, 20 Stat. 113. Having thus decided that the indictment as construed charged the doing of no unlawful act, but simply the exercise of a lawful right not in any way prohibited, but on the contrary impliedly sanctioned by the statute, it was decided that under no possible construction could the acts charged constitute an unlawful conspiracy within the second clause of § 5440, Rev. Stat. And for additional reasons expressed in the opinion the conclusions of the court concerning the bar of the statute of limitations and the duplicity of the indictment, if it were so construed as to save it from the statute, were fully expressed.

This writ of error, direct from this court, is prosecuted by the United States under the authority of the act of 1907.[1]

Our right to review the decision below is questioned by the defendants in error on the ground, first, that the court below did not construe, but simply interpreted, § 5440, Rev. Stat., and the provisions of the timber and stone act; and, second, because, although it applied the bar of the statute of limitations, the court did not do so by way of sustaining a plea in bar, but simply incidentally passed upon that question in deciding the demurrer.

The want of merit in the first contention is established by *United States* v. *Keitel*, No 286 of this term, *ante*, p. 370.

As therefore we have in any event jurisdiction to review the action of the trial court in construing the timber and stone act and in fixing the meaning of § 5440, Rev. Stat., in the light of that construction, we presently pass the consideration of the ruling made by the court in respect to the statute of limitations. We do this because if it be found that the court below was right in its conclusions as to the construction of the timber and stone act and of § 5440, Rev. Stat., its judgment quashing the indictment will be sustained, and its action concerning the statute of limitations will become irrelevant, and will not require examination, unless it be our duty under the act of 1907, which we shall also hereafter consider, to pass upon that question, although its decision will have become wholly unnecessary.

It is also settled by *United States* v. *Keitel, supra*, that the right given to the United States to obtain a direct review from this court of the rulings of the lower court on the subjects embraced within the statute of 1907 does not give authority to revise the action of the court below as to the mere construction of an indictment, and therefore in the exercise of our power to review on this record we must accept the construction of the indictment made by the lower court and test its construction of the statute in that aspect.

---

[1] The act of March 2, 1907, is reproduced in full on p. 398, *ante.*

While not questioning this general rule, the United States insists that the case here presented is an exception to that rule, because of the contention that the construction given by the court below to the indictment was but the necessary result of the misconstruction which the court applied to the timber and stone act, and hence that a review of the construction given to the indictment is necessarily involved in the determination of the correctness of the construction given by the court to the statute. Conceding the premise for the sake of argument, the deduction by which it is sought to apply it to the case in hand is, we think, without foundation. It proceeds upon a subtle separation of particular words or phrases in the indictment from the context of that pleading and the affixing to the words thus separated a penetrating but, nevertheless, too narrow significance for the purpose of establishing the proposition relied upon. On the contrary, we think the conclusion cannot be escaped that the construction given by the court below to the indictment was the result merely of the analysis which the court made of the indictment as an entirety, of its appreciation of the nature and character of the acts therein referred to and of the overt acts alleged, the whole read in the light of the elementary canons of construction applicable to criminal pleadings and elucidated, as the court expressly stated, by the entire absence of anything in the indictment tending to show that the pleader contemplated alleging the existence of any conspiracy to induce the making of applications to purchase.

Coming to consider the construction given by the court to the timber and stone act as applied to the allegations of the indictment, as interpreted by the court, the correctness of the construction given by the court below to the statute is established beyond controversy by the decision in *Williamson* v. *United States*, 207 U. S. 425, announced since the decision below was rendered.

The *Williamson case* was a prosecution for a conspiracy in violation of § 5440, Rev. Stat., to procure the commission of

the crime of subornation of perjury by causing certain affidavits to be made for the purpose of acquiring land under the timber and stone act. At the trial, over exceptions, affidavits as to the *bona fides* of a number of applicants and of the purpose of each in making his application to acquire only for himself were offered in evidence, and like affidavits which were required by the rules and regulations of the Land Department at the time of the final entry were also offered in evidence. The Government insisted that the papers were admissible because the indictment charged a conspiracy to suborn perjury, not only at the time of the application to purchase but also in the subsequent stage of making the final entry, and that even if this were not the case the affidavits made after application were admissible for the purpose of showing the motive which existed at the time the application was made. It was decided that the indictment only charged subornation of perjury at the time of the application. Passing on the alleged contention as to motive, it was held that in view of the requirements as to an affidavit exacted by the statute to be made at the time of the application as to the *bona fides* of the applicant and his intention to buy for himself alone and the absence of any such requirement in the statute as to the final entry, that the prohibition of the statute applied only to the condition of things existing at the time of the application to purchase and did not restrict an entryman after said application was made from agreeing to convey to another and perfecting his entry for the purpose after patent of transferring the land in order to perform his contract. It was, therefore, held that the affidavits made at the final stage of the transaction were not admissible to show motive at the time of the applications to purchase, and that any requirements contained in the rules and regulations of the Land Department making an affidavit essential to show *bona fides*, etc., at the final stage were *ultra vires* and void. In passing upon the subject the ruling to the like effect concerning the timber culture act, made in *Adams* v. *Church, supra,* was

reiterated and approved, and declared to be applicable to the timber and stone act, despite immaterial differences in the phraseology of the two acts. The court, after approvingly referring to *Adams* v. *Church,* and after reviewing the timber, and stone act, and calling attention to the entire omission of all requirement that statement as to the purpose and intention of the entryman should be made at the date of the final step in the acquisition of the land, said (p. 460): "Indeed, we cannot perceive how under the statute if an applicant has, in good faith, complied with the requirements of the second section of the act, and pending the publication of notice, has contracted to convey, after patent, his rights in the land, his doing so could operate to forfeit his right."

It is insisted by the Government that, however conclusive may be this ruling as to the power of the applicant to sell after application and to perfect his entry for the purpose of enabling him to perform such contract, such ruling does not conclude the contention that a conspiracy formed to induce an entryman who has made his application to purchase subsequently to agree to convey his interest in the land would be a violation of the statute. But we are constrained to say that this is a mere distinction without a difference. The effect of the ruling in the *Williamson case* was to hold that the prohibition of the statute only applied to the period of original application, and ceased to restrain the power of the entryman to sell to another and perfect his entry for the purpose of transferring the title after patent. This being concluded by the decision in the *Williamson case,* the distinction now sought to be made comes to this, that it is unlawful under the statute to conspire to have that done which the statute did not prohibit, and, on the contrary, by implication recognized could be lawfully done without prejudice or injury to the United States in any manner whatever. This also serves to demonstrate that no error was committed by the court below in holding that under § 5440, Rev. Stat., the acts charged in the indictment could not possibly have constituted a defrauding

of the United States in any manner or for any purpose within the intendment of that section.

It remains only to notice the ruling of the court below as to the bar of the statute of limitations. While the act of 1907[1] gives authority to come directly here to obtain a review of the construction of a statute under the circumstances which the act enumerates, and also authorizes us to review a "decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy," we consider that the power given is coincident with the purpose for which it was conferred, that is, to have determined in a case within the statute the question whether or not the Government is entitled to further prosecute the case, and therefore does not of course call upon us to decide every question of the character referred to in the statute, when by the decision of one of such questions the case is completely disposed of and the other questions have become so irrelevant as to cause it to be in our opinion unnecessary to consider and determine them. Of course, under these circumstances, we intimate no opinion whatever concerning the correctness of the construction adopted by the court below in respect to the statute of limitations.

*Affirmed.*

---

[1] The act of March 2, 1907, is reproduced in full, *ante,* p. 398.