UNITED STATES v. KETTENBACH et al.

(Circuit Court, D. Idaho, N. D. November 30, 1909.)

1. EQUITY (§ 214*)—BILL—MOTION TO STRIKE.

A motion to strike out parts of an amended bill as "irrelevant, redundant, surplusage, and immaterial," while a proper pleading under the Idaho Code, is not proper practice on the equity side of the federal court sitting in that state; such objection being availed of by exceptions for impertinency.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 487; Dec. Dig. § 214.*]

2. EQUITY (§ 214*)—"IMPERTINENT."

To charge that matter alleged in an amended bill is irrelevant and redundant is substantially to charge that it is subject to exceptions as impertinent.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 487; Dec. Dig. § 214.*

For other definitions, see Words and Phrases, vol. 4, pp. 3423–3424.]

3. EQUITY (§ 214*)—BILL—MOTION TO STRIKE—EXCEPTIONS.

Where a motion to strike matter from an amended bill as irrelevant, redundant, surplusage, and immaterial was erroneously filed instead of exceptions to the bill for impertinency, the misnomer, not being prejudicial, would be disregarded and the motion regarded as exceptions to the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 487; Dec. Dig. § 214.*]

4. PUBLIC LANDS (§ 120*)—ENTRY—TIMBER AND STONE ACT—FALSE REPRESENTATIONS—FINAL PROOF—FRAUD—IMPERTINENCY.

In a suit by the United States to cancel patents to lands acquired under the timber and stone act (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]) for fraud on the theory that the entrymen entered the lands in fact for others than themselves, allegations showing the rules and regulations of the Interior Department prescribing interrogatories to be propounded to applicants for timber lands on final proof and concerning other acts of the entrymen without warrant of law should be stricken from the bill as impertinent, since, if the entryman made his initial declaration in good faith and no other person at that time had any direct or indirect interest in the entry, the fact that subsequent thereto he contracted to sell the land to another was no objection to his right to complete his entry and obtain a patent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 335; Dec. Dig. § 120.*]

5. PUBLIC LANDS (§ 120*)—ENTRY—TIMBER AND STONE ACT—FINAL PROOF—MOTIVE—EVIDENCE.

In a suit by the United States to cancel certain patents to land entered under the timber and stone act for fraud, in that the entrymen did not enter the land in good faith, but with intent to transfer their rights to others, evidence of transfer or acts indicating a motive at the time final proof was made to transfer the land was irrelevant to show an alleged illegal purpose in the primary application for entry, which alone determines the bona fides of the application.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 335; Dec. Dig. § 120.*]

Action by the United States against William F. Kettenbach and others. On exceptions to the bill for impertinency. Allowed in part.

Peyton Gordon and Geo. V. Triplett, Jr., Special Assistants to the Attorney General, for the United States.

George W. Tannahill, for defendants.

DIETRICH, District Judge. This suit was commenced by the United States to cancel several patents to lands the title to which was acquired under the provisions of the timber and stone act (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]). The theory of the complainant is that the defendants entered into a conspiracy for the wrongful acquisition of these lands, the scheme being to induce various qualified persons to make entries ostensibly for themselves, but in reality upon behalf of the defendants and for their use. It is charged that in their initial applications the entry-men falsely represented that they applied to enter the lands in good faith, etc., as provided by law, and that also at the final proof they further represented that they had not since filing their applications entered into any agreement for the alienation of the lands, or any interest therein. No discovery is sought, and answer under oath is waived. The original bill was filed before the decision in the Williamson Case, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, prior to which the Interior Department maintained and enforced the view that an entryman proceeding under the timber and stone act could not lawfully make any agreement for the alienation of an interest in the land, or the timber growing thereon, until after final proof. In sustaining the demurrer to the bill, which was submitted after the Williamson Case had been decided, it was suggested by the court that possibly the complainant would deem it desirable to reform the bill to bring it into harmony with the rule of that case; it being assumed, without argument, that in redrafting the bill certain portions thereof would probably be eliminated. A different view, however, was taken by the government, and the allegations relating to the final proofs, amplified and supplemented, have been retained in the amended bill, to which the defendants have interposed what they designate as a motion to strike out certain portions thereof, on the ground, as stated in the motion, that the specified paragraphs are "irrelevant, redundant, surplusage, and immaterial." Such a motion would be a proper pleading under the Idaho Code if the suit were pending in the state courts, and doubtless counsel for the defendant inadvertently fell into the error of assuming that a like practice prevails upon the equity side of this court. Attention having, at the argument, been called to the impropriety of such a motion here, defendants have now asked leave to file exceptions for impertinency, to take the place of the motion; the exceptions tendered being directed to substantially the same matters covered by the motion. While the original paper is called a "motion," instead of "exceptions," and while it describes the objectionable matter as being "irrelevant, redundant, and immaterial," instead of describing it as being "impertinent," the courts are concerned with the substance, and not the form, and I therefore think that without impropriety the paper may be considered as presenting exceptions for impertinency, and such is the view that I shall take of it. To charge that matter is irrelevant and redundant is substantially to charge that

it is impertinent, and a mere misnomer of a pleading is ordinarily held to be immaterial and nonprejudicial. Barrett v. Twin City Power Company (C. C.) 111 Fed. 45. However, the defendants are permitted to file the paper now presented and designated "Exceptions to the Amended Bill."

Many of the exceptions are directed to those paragraphs of the bill which set forth the rules and regulations of the Department of the Interior prescribing certain interrogatories to be propounded to applicants for timber land at the final proof, and the scope of the alleged conspiracy, so far as it relates to such proofs, and other acts of the entrymen pertaining thereto; it being the contention of the defendants that under the rule of the Williamson Case these final proofs were exacted without warrant of law, and that, therefore, the averments pertaining thereto are impertinent. The complainant denying to the Williamson decision an effect so sweeping contends that the final proof may properly be pleaded and exhibited in evidence. Its theory seems in part to be disclosed in the bill itself, where it is alleged that the defendants induced the entrymen falsely to answer these final proof questions, and the entrymen made false answers "for the purpose and to the end that the said officers and the other officers of the United States concerned and charged with the administration of the laws governing the disposal of the public lands might, and should, thereby be deceived, imposed upon, and fraudulently misled, and so prevented from further inquiry, investigation, and consideration concerning such entries." If we assume the correctness of this conclusion, and it is difficult to anticipate how it could be proved or disproved, upon what theory can final proof be material? A full investigation and disclosure of the facts in the case must discover the existence of one of three possible conditions: First, that the entrymen from the beginning acted in good faith, and never alienated, or agreed to alienate, any interest in the land, in which contingency obviously the government could not now recover; or, second, that while at the time the applicant made his initial declaration no other person had any interest, direct or indirect, in the entry, subsequently, and prior to final proof, an agreement of sale was entered into, in which case, under the rule of the Williamson decision, as also of the Biggs Case, 211 U. S. 507, 29 Sup. Ct. 181, 53 L. Ed. 305, he would have been guilty of no wrong, and would be entitled to patent—for if, in order to induce the land officers to grant to him that which under the law he was undoubtedly entitled to receive, he concealed from them immaterial facts, reprehensible though his conduct might be from a moral viewpoint, there would be no actionable wrong. While its officers might thus have been deceived, the government was not defrauded. The other possible contingency is that the entryman from the beginning acted in bad faith, his original sworn declaration being false; and such is the case exhibited by the bill. But if the original declaration was false in material respects, and the officers of the government charged with the disposal of public lands were thereby induced to accept the application, and thereafter to issue the patent, how could it now be material whether or not these officers were at a later

175 F.—30

date by other false representations on the part of the entryman deterred from making inquiry into the truthfulness of the original declaration? No law imposed upon them the duty to make such investigation, and the fact that the officers were twice deceived, if deceived at all, does not enlarge the complainant's rights or strengthen its case. If there was no actionable fraud in the original declaration, there was none at all. If the original declaration was fraudulent, there being no obligation upon the part of the government to discover the fraud, it is now immaterial whether or not its officers were by the conduct of the entrymen thereafter diverted from an investigation which they might otherwise have voluntarily made. If the failure upon the part of the officers of the government to detect the fraud in the original declaration prior to the issuance of patent concluded all inquiry into the bona fides of the entry, the complainant's contention would not be devoid of merit, for it would become material to show that by the deceit of the entrymen the officers were prevented from performing their duty and making the discovery; but it is not contended that such is the rule. 'No legitimate avenue of inquiry which was then open to the officers of the Land Department is now closed to this judicial inquiry. It must be borne in mind that the plaintiff in urging this point does not pretend that the false statements made by the entrymen at the final proof independently and of themselves confer upon the plaintiff a right of action. Such contention was made and rejected in the Biggs Case. While that was a criminal case, the charge there, as here, was of a conspiracy to defraud the government out of timber lands by substantially the same scheme as is here alleged to have been devised and used by the defendants. Mr. Justice White, delivering the opinion of the court, said:

"It is insisted by the government that, however conclusive may be this ruling as to the power of the applicant to sell after application and to perfect his entry for the purpose of enabling him to perform such contract, such ruling does not conclude the contention that a conspiracy formed to induce an entryman who has made his application to purchase subsequently to agree to convey his interest in the land would be a violation of the statute. But we are constrained to say that this is a mere distinction without a difference. The effect of the ruling in the Williamson Case was to hold that the prohibition of the statute only applied to the period of original application, and ceased to restrain the power of the entryman to sell to another and perfect his entry for the purpose of transferring the title after patent. This being concluded by the decision in the Williamson Case, the distinction now sought to be made comes to this: That it is unlawful under the statute to conspire to have that done which the statute did not prohibit, and, on the contrary, by implication recognized could be lawfully done without prejudice or injury to the United States in any manner whatever. This also serves to demonstrate that no error was committed by the court below in holding that under section 5440, Rev. St. [U. S. Comp. St. 1901, p. 3676], the acts charged in the indictment could not possibly have constituted a defrauding of the United States in any manner or for any purpose within the intendment of that section."

The primary fraud lies in the false application and the actionable wrongdoing of the claimant consists of that which he did prior to and at the time of making his application, and not what he did thereafter. If we were to assume falsity in the answers referred to by the complainant as having been made at the time of final proof, nevertheless failure to prove falsity in the primary application would be

fatal to the complainant's right to recover. Upon the other hand, if we assume the falsity of the primary application, falsity in the final proof is not necessary, and hence becomes immaterial to the plaintiff's right of recovery. In either alternative, the controlling issue is ruled solely by the character of the primary application.

It remains to consider whether or not the final proofs are of evidentiary potency as tending to prove that the entries were illegal in their inception. Aside from the question of the propriety of pleading matters which thus by hypothesis are only of probative value, upon what theory or by reference to what principle of evidence may they be regarded as proofs of the original fraud? For example, in his declaration, the entryman, upon oath, states that he makes the application "in good faith to appropriate the land to his own exclusive use and benefit," etc. One of the interrogatories propounded upon final proof was: "Do you make this entry in good faith for the appropriation of the land exclusively to your own use and not for the use and benefit of another person?" By each entryman in this case, according to the allegations of the bill, this question was answered in the affirmative. If the question and answer be construed as relating back to the time of the inception of the entry, the answer thereto is not only consistent with, but is a mere repetition of, the initiatory sworn statement. How then can it be regarded as proof of the falsity of such original declaration without indulging the unreasonable assumption that the consistent repetition of a statement under oath is proof of its falsity?

If it be suggested that by extrinsic evidence it can be and will be shown that the answer to the interrogatory was untrue, the reply is that, under the rule of the Williamson Case, it would be immaterial to show the falsity of the answer so far as the question relates exclusively to the period following the filing of the original application; and, as to the preceding period, it is obvious that any evidence tending to impeach the answer so far as it relates to that period would with equal force and directness tend to disclose the falsity of the like statement contained in the declaration, and such evidence would therefore be admissible in support of the charge of primary fraud in making a false application without the circuitous device of pleading and exhibiting in evidence the final proof. From this statement I am not to be understood as holding that such evidence would necessarily tend to prove fraud in the original declaration, but only that if it has a tendency to discredit an answer at the final proof, directed to conditions existing at and prior to the time of the primary application, the relevancy of such evidence in no wise depends upon the existence or the character of the final proof.

Finally, it is argued that deception in the final proof may be established as tending to show fraudulent motive in the original application. The argument here consists of little more than a mere statement of the proposition. No precedent is cited, nor is there any very clear reference to general principles. The difficulty seems to lie in the apparent reluctance of counsel for the government fully to accredit the Williamson decision, and to recognize the fact that prior to its rendition the officers charged with the disposal of public lands were improp-

erly, though without wrongful intent, refusing to issue patents for timber lands to entrymen who, however perfect their good faith prior to and at the time of their primary application, subsequently and before final proof agreed to alienate their title when it should be procured. Knowing of this rule of the Interior Department, and of its strict enforcement, the entryman who was guilty of no wrong up to the time of his application, and who made an honest and truthful declaration, but who thereafter, and prior to final proof, contracted to sell, was, if he would procure patent, compelled to answer the questions at final proof precisely as it is alleged they were answered by the entrymen here. If, therefore, two men, one of whom made his application in good faith, and one of whom made his application in bad faith, were, in order to secure patent, compelled both to answer the questions put to them at final proof in the same way, how can such answers be regarded as proof of fraudulent intent in the original applications? But, as I view it, the point is foreclosed by the Williamson decision adversely to the government, and therefore any extended consideration would be gratuitous. Upon mature reflection I am unable to yield to the suggestion that in so far as this point is involved the Williamson decision is obiter, nor am I able to perceive a material distinction in principle between that case and this. It is true that the point was not vital to the conclusion reached by which the judgment of the lower court was reversed; but it was fairly presented upon the record, was material, and was deliberately decided as involving a question which might arise upon a future trial. Mr. Justice White, who delivered the opinion of the court, after clearly defining the limited scope and function of the final proof as prescribed by the timber and stone act, states his conclusion in the following language:

"As then there was no requirement concerning the making in the final proof of an affidavit as to the particulars referred to, and as the entryman who had complied with the preliminary requirements was under no obligation to make such an affidavit and had full power to dispose ad interim of his claim upon the final issue of patent, we think the motive of the applicant at the time of the final proof was irrelevant, even under the broad rule which we have previously in this case applied, and therefore that error was committed not alone in instructing the jury that the indictment covered or could cover the procurement of perjury in connection with the final proof, and that the jury might base a conviction thereon, but in admitting the final proof as evidence tending to show the alleged illegal purpose in the primary application for the purchase of the lands." 207 U. S. 462, 28 Sup. Ct. 177 [52 L. Ed. 278].

We have here a clear declaration that the motive of the entryman at the time of final proof is irrelevant, and that the final proof is not admissible "as evidence tending to show the alleged illegal purpose in the primary application." In reaching this conclusion, the court was not unmindful or unappreciative of the rule allowing great latitude in the reception of circumstantial evidence to establish unlawful motive or intent in charges involving offenses incapable of direct proof. Earlier in the opinion this rule is liberally stated and expressly approved, but it is said in the extract already quoted:

"We think the motive of the applicant at the time of final proof was irrelevant, even under the broad rule which we have previously in this case applied."

The fact that in the Williamson Case the charge was of a conspiracy to suborn perjury, whereas here it is of a conspiracy to defraud, presents a distinction more apparent than real. Both cases involve violations of the timber and stone act. The purpose, method, and means employed in both are identical. The form and appellation of the charges may be different, but the facts constituting them are the same. Bearing in mind the circumstances of each case, proofs of one charge are proofs of the other, for the specific charge of perjury necessarily implies fraud, and the specific charge of fraud necessarily implies perjury. Of course, I am not to be understood as holding that the proofs are necessarily identical or conterminous. Evidence sufficient to disclose a case of fraud might, both in volume and scope, fall far short of establishing the charge of perjury. But in the Williamson Case the court was not considering the sufficiency of the final proof as evidence, but its relevancy—not how much weight it had, but had it any weight at all. And the trial court was held to have committed error in admitting it as tending to substantiate the charge. Bearing in mind the nature and scope of the averments in that case and in this, I am wholly unable to conceive how a class of facts irrelevant and having no tendency to prove that charge of subornation of perjury could be relevant or have a tendency to prove this charge of fraud.

For the reasons stated, I have concluded to allow the exceptions to paragraphs 2, 5, 6, 8, 12, and 13, and to deny the others. To be sure, in paragraph 8 there are some averments relating to the primary application, but they are, in substance, only repetitions of allegations of a like character contained in other parts of the bill, and, with the designated paragraphs stricken out, the averments relating to the preliminary application are amply sufficient to admit of all proper evidence relating to fraud therein.

In reaching this conclusion, I have not been unmindful of the rule that, if there is doubt of the pertinency of the matter excepted to, the exceptions should be denied, nor have I withheld due consideration of the complainant's suggestion that the retention in the bill of such matter, even if it be impertinent, would be without material prejudice to the defendants. It need only be said that my mind is free from doubt, and I am unwilling to permit needless augmentation of the expense of litigation which at best must be a heavy burden. It is sometimes said that impertinent matter may be retained, and, by the imposition of costs upon the offender, the rights of the innocent party may be fully protected. While not infrequently in cases of litigation between private parties such a course may be practicable, if we consider here only the interests of the defendants, the government being the adversary party, and the power of the court to impose costs being therefore limited, no adequate relief could thus be administered. But, were it otherwise, considerations of public interest require the court, so far as lies within its power, to check, and not to lend its approval to, the needless expenditure of public funds. Aside from the question of the impertinency of the paragraphs referred to, the volume of the bill is otherwise greatly enlarged by an affluence of synonyms and a rhetorical elaboration rarely found in pleadings of this character. The

general rules of equity practice contemplate and require that bills shall be expressed in concise language. That the matter of expense to which I have referred is not trivial, but is a substantial consideration, becomes apparent by reference to the fact that at the threshold of this and two other suits of like nature between practically the same parties pending in this court the cost merely of taking out copies of the bills for service upon the defendants, as I am informed, exceeds $600. If the averments of the bills are specifically traversed or admitted, as presumably they will be, the answers cannot well be less voluminous; and further considering the probability of separate answers, and the possibility of a record on appeal, the aggregate expense may easily become prohibitive upon a litigant of limited means.

Let an order be entered permitting the filing of the formal exceptions, and allowing the exceptions to paragraphs 2, 5, 6, 8, 12, and 13 of the amended bill, and denying them as to other paragraphs thereof.