DWINNELL et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911. Dissenting Opinion, February 14, 1911.)

No. 1,865.

1. CONSPIRACY (§ 43*)—INDICTMENT—STATUTES—OVERT ACT.

Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), provides that if two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of them do any act to effect the object of the conspiracy, all shall be liable to a penalty and to imprisonment, etc. *Held* that, while the conspiracy denounced by such section is not punishable until the commission of some overt act in pursuance thereof, the offense consists of the conspiracy alone, so that the validity of an indictment under such section must be tested by averments concerning the conspiracy unaided by those in respect to the overt acts committed thereunder.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 89, 97; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONSPIRACY (§ 43*)—INDICTMENT—SUBORNATION.

An indictment charged that defendants willfully, etc., conspired at a particular time and place within the district to suborn certain named persons at a stated time, before one alleged to be the duly appointed, qualified, and acting register of the land office at R., by applying pursuant to Timber and Stone Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), for certain of the public lands of the United States by swearing to and filing with such land officer a statement required by the act and regulations of the Land Department alleging that the applicant did not apply to purchase for speculation but in good faith and to appropriate to his own exclusive use and benefit, etc.; whereas, in truth the statement was willfully false and intended to be so by each of them, in that it was intended that each should have a distinct agreement with the defendants that the land should be for defendant's benefit. *Held*, that the indictment was not fatally defective for failure to show that the precise piece or pieces of land to be acquired had been agreed on by the alleged conspirators at the time the conspiracy was formed or for failure to allege the persons to be suborned or the particular time and place of such subornation, but that the indictment sufficiently stated the offense of conspiracy to defraud the United States denounced by Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676).

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 97; Dec. Dig. § 43.*]

3. CONSPIRACY (§ 45*)—EVIDENCE—ACTS SUBSEQUENT TO COMPLETION OF CONSPIRACY.

In a prosecution for conspiracy to defraud the United States by suborning certain named persons to commit perjury in making entries under Timber and Stone Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), evidence of acts of the alleged perjurers committed long after they had sworn to and filed their statements, and that subsequent to such filing they had agreed with defendant D. for a money consideration to file a relinquishment of their applications at such a time as he could manage to take it up with script, together with a relinquishment so filed, was inadmissible to show motive.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. § 45.*]

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of California.

George W. Dwinnell and another were convicted of conspiracy to suborn, and they bring error. Reversed and remanded.

S. C. Denson, Bert Schlesinger, and R. S. Taylor, for plaintiffs in error.

Robert T. Devlin, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HANDFORD, District Judge.

ROSS, Circuit Judge. The indictment in this case, the validity of which is strenuously contested by the plaintiffs in error, alleges, in substance, that at a certain stated time and place in the Northern district of California, to wit, in the county of Siskiyou in that state, the defendants to the indictment willfully and unlawfully conspired and agreed together and with various other persons to commit the crime of subornation of perjury, by instigating and procuring James Frederick French, Benjamin F. French, Frederick M. French, Samuel

L. French, Clarence M. Prather, and Arthur W. Jacquette, to commit the crime of perjury in the state and district stated, by appearing before Clarence W. Leininger, the duly appointed, qualified, and acting register of the United States Land Office at Redding, Cal., at a certain stated time, and "respectively take an oath to a sworn statement under the timber and stone lands acts of the United States, in which sworn statements each of the affiants so named should swear that he 'did not apply to purchase the land described in said sworn statement on speculation but in good faith to appropriate it to his own exclusive use and benefit, and that he had not directly or indirectly made an agreement or contract, or in any way or manner, with any person or persons whomsoever, by which the title he might acquire from the government of the United States would inure in whole or in part to the benefit of any person except himself,' which said sworn statements, after being so sworn to before the said Clarence W. Leininger, register as aforesaid, were to be filed in the said United States Land Office at Redding, Cal., by each of the persons so subscribing and swearing to the said sworn statement respectively, and which sworn statements, so to be sworn to and filed with the register of the United States Land Office as aforesaid, should be known by each of the said applicants to be false in a material matter therein to be sworn to, in this: That each of the persons at the time of so subscribing and swearing to his respective sworn statement had an agreement beforehand and an express understanding that the title he was to secure and the land he was to apply for in his sworn statement was for the benefit of the said defendants; and the defendants, and each of them, then and there, at the time of so conspiring as aforesaid, well knew that the said sworn statements aforesaid, so to be filed, would be false in the said material matter just above stated."

The indictment then alleges that the defendants thereto, to carry into effect the said unlawful conspiracy, procured a number of blank timber and stone land sworn statements under the rules prescribed in pursuance of the aforesaid act of Congress, and filled out such sworn statements for land of the United States, describing therein the specific tracts applied for by James Frederick French, Benjamin F. French, Frederick M. French, Samuel L. French, Clarence M. Prather, and Arthur W. Jacquette, respectively, and setting forth various other alleged acts of those parties and of the defendants, committed in pursuance of the alleged conspiracy, and further alleged that, notwithstanding the allegations contained in the sworn statements referred to, in truth "said applicant did not apply to purchase the land described in his application in good faith to appropriate it to his own exclusive use and benefit," but in truth that each of the said applicants well knew that he "had directly made an agreement and contract with the said George W. Dwinnell that the application should be made for the benefit of the said George W. Dwinnell, and each of the applicants so swearing to his sworn statement had so made the contract as aforesaid, whereby the title to the land should be transferred to the said George W. Dwinnell, and each

of the defendants then and there well knew that each of the applicants so swearing to the sworn statements was committing the crime of perjury in so swearing."

Section 1 of the Timber and Stone Act of June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. Stat. 1901, p. 1545), provides:

"That surveyed public lands * * * valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale according to law, may be sold * * * in quantities not exceeding 160 acres to any one * * * at the minimum price of two dollars and fifty cents per acre; and lands valuable chiefly for stone may be sold on similar terms as timber lands."

Section 2 of the act, so far as it is applicable to the present case, is as follows:

"Sec. 2. That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation and, valuable chiefly for its timber or stone; * * * that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not directly or indirectly made any agreement or contract in any way or manner with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or the receiver of the Land Office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury and shall forfeit the money which he may have paid for said lands and all right and title to the same, and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void."

The third section of the act, so far as here applicable, is as follows:

"Sec. 3. That upon the filing of said statement * * * the register of the Land Office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication at the expense of such applicant, in the newspaper published nearest the location of the premises, for a like period of time and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the Land Office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as hereinbefore required; secondly, that the land is of the character contemplated in this act * * * and, upon payment to the proper officer of the purchase money of said land, together with the fees of the register and the receiver, as provided for in case of mining claims in the twelfth section of the act approved May tenth, 1872, the applicant may be permitted to enter said tract, and on the transmission to the General Land Office of the papers and testimony in the case, a patent shall issue thereon."

By act of August 4, 1892, c. 375, § 2, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1547), the provisions of the above-mentioned act were extended to all the public-land states.

The indictment in question was based on section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), which provides:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years."

While the conspiracy denounced by the section quoted is not punishable until the commission of some overt act in pursuance of it, the offense consists of the conspiracy alone. United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698. And as a result, the validity of the indictment must be tested by the averments concerning the conspiracy, unaided by those in respect to overt acts committed thereunder.

Reading the allegations of the indictment in connection with the statute, and the rules and regulations adopted by the Land·Department pursuant thereto, it is seen that it in effect charges that the defendants willfully and unlawfully entered into a conspiracy, at a time and place named, within the district where the indictment was found, to suborn certain named persons to go at a certain stated time before a named person, alleged to be the duly appointed, qualified, and acting register of the Land Office at Redding, Cal., and respectively make application, under and in pursuance of the above-mentioned act of Congress, for some of the public land of the United States, by swearing to and filing with such land officer of the government the statement expressly required by the act of Congress and the rules and regulations of the Land Department, setting forth, among other things, that the applicant does "not apply to purchase the land described in said sworn statement on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he had not directly or indirectly made any agreement or contract or in any way or manner with any person or persons whomsoever, by which the title he might acquire from the government of the United States would inure in whole or in part to the benefit of any person except himself"; whereas, in truth and fact, the said statement of the said applicants would be willfully false, and intended so to be by each of them and by the said defendants in that each case of the said applicants should have a distinct agreement with the defendants that the land he should so apply for and secure from the government under its act of Congress, should be for the benefit of the defendants.

The subject of the alleged conspiracy was necessarily public land of the United States, for none other was embraced by the act of Congress under which the alleged contemplated proceedings were to be had, and in respect to which the register of the Land Office is by statute authorized to administer oaths to applicants therefor. It is immaterial that the precise piece or pieces of land to be acquired should have been agreed upon by the alleged conspirators at the time of the formation of such conspiracy, nor, indeed, was it essential that the identity of the persons to be suborned or the particular time and place of such subornation be alleged. Williamson v. United States, 207 U. S. 425, 447, 448, 449, 28 Sup. Ct. 163, 52 L. Ed. 278; Van Gesner v. United States, 153·Fed. 46, 52, 53, 54, 82 C. C. A. 180.

We are of the opinion that the indictment was sufficient.

The crime charged therein was, however, as has been shown, the subornation of certain named persons to commit perjury in making certain sworn statements under the timber and stone act wherein they, in pursuance of the alleged conspiracy, should willfully swear falsely that they had made no agreement, directly or indirectly, by which the title they might acquire from the government should inure in whole or in part to the benefit of any person or persons other than the applicant; whereas, in fact each of said applicants at the time of so swearing would have an express agreement that the land he was so to apply for and the title thereto he should so secure was for the benefit of the said defendants. If the proof sustained that charge, the alleged conspiracy was thereby established, and (if the necessary overt act was committed) properly punishable. And there was evidence on the part of the government tending to sustain it, which may or may not have satisfied the jury. But to further sustain the charge so made the government was permitted on the trial of the case, over the objections and exceptions of the defendants, to put in evidence acts of the alleged perjurors committed long after the swearing to and filing of their statements under and in pursuance of the timber and stone act, as well as conversations between them and the defendant Dwinnell concerning those acts, to wit, testimony to the effect that, subsequent to the filing of the sworn statements of the applicants for the land in question, they, or at least some of them, agreed with the defendant Dwinnell, for a money consideration, to file a relinquishment of their applications for the land at such time as Dwinnell could manage to take it with scrip, which relinquishments were subsequently offered in evidence by the government and admitted over the objections and exceptions of the defendants.

Under the rulings of the Supreme Court in the Williamson Case, supra, and in the later case of United States v. Biggs, 211 U. S. 507, 29 Sup. Ct. 181, 53 L. Ed. 305, we think that testimony and evidence of conversations and acts had and done by the parties subsequent to the time when under the law the alleged conspiracy was consummated were clearly inadmissible. In the Williamson Case, in which a similar subornation of perjury was charged, the court held that the crime, if committed, was consummated when the false swearing was done in the applications filed for the land under the timber and stone act; that the prohibition of the statute applied only to the condition of things existing at that time: and that consequently affidavits subsequently filed in the Land Department, even though willfully false, were not admissible to show motive at the time of the application. The decision in the Williamson Case was approved and followed in the subsequest one of Biggs, already cited.

However fraudulent the acts of the parties in respect to the relinquishment referred to, they do not constitute the crime alleged in the indictment.

The judgment is reversed, and the cause remanded to the court below for a new trial.

GILBERT, Circuit Judge (dissenting). The indictments charged Dwinnell, Gilpin, Gagnon, and Deter with entering into a conspiracy to commit the crime of subornation of perjury by procuring J. F. French, F. M. French, B. F. French, Samuel M. French, Clarence M. Prather, and Arthur W. Jacquette each to take an oath to a sworn statement under the timber and stone land acts of the United States, in which each should swear that he did not apply to purchase the land described in his sworn statement on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he had not directly or indirectly made any agreement or contract or in any way or manner with any person or persons whomsoever, by which the title he might acquire from the government of the United States would inure in whole or in part to the benefit of any person except himself, said oaths to be false and known by the affiants to be false, in that each of said persons had an agreement beforehand and an express understanding with the defendants that the title so procured was to be for the benefit of the defendants. The indictment then alleges the making and filing of the sworn statements, describes the lands to which they applied, and alleges that the conspirators on October 27, 1906, and October 31, 1906, the days on which the applications were filed, furnished the applicants money to pay their expenses while standing in line awaiting their turn to file their statements, and procured them to take and file their false oaths, setting forth the oaths, and alleging their falsity and the knowledge of the affiants of their falsity. The indictment then charges that, to carry out the said unlawful conspiracy, Dwinnell at divers days mentioned between November 12, 1906, and December 1, 1906, did prepare relinquishments of the land so filed upon by the applicants and procured them to sign the same, and at the same time paid them the specific sums which had been agreed upon prior to the time of making their applications as the price for which each applicant had agreed to make entry of the land for him, which sum was $200 for each applicant excepting that one was alleged to have been paid $157 on account of $400, the agreed price.

On the trial the government introduced testimony to show that J. F. French, B. F. French, F. M. French, Samuel M. French, Jacquette, and Prather made their entries at the instance of Dwinnell and under an agreement with him whereby they were subsequently to sign relinquishments for his benefit upon his paying them certain sums agreed upon, which was $200 for each, except that in the case of Jacquette it was to be $400, and the testimony of the entrymen, except that of J. F. French, was received without objection, that in pursuance of the agreement Dwinnell presented to them at different dates from two to four weeks after the entries were made relinquishments in his handwriting, and that he obtained their signatures thereto and paid them the money agreed upon. All their relinquishments except those of Prather and B. F. French were offered and received in evidence without objection, and as to the relinquishment of James F. French counsel for plaintiffs in error expressly waived objection. The objection taken to the admission of the two relinquishments signed by Prather was in these words:

"I simply wish to interpose a very formal objection to these, if the court please. Your honor will see from an inspection of these papers that they appear to be dated long after these locations—one bears date December 4, 1906, and the other bears the date November 26, 1906. If they are evidence at all, they are evidence in our favor."

The objection was overruled and an exception allowed. The objection made to the relinquishment of B. F. French was that the evidence failed to show that it was made in pursuance of a prior agreement with Dwinnell; but error is not assigned to the admission of the relinquishment or the testimony in regard thereto. F. M. French, one of the entrymen, was asked:

"Q. Did you have any dealing with Dr. G. W. Dwinnell in reference to getting your relinquishment for that land?"

The question was objected to as immaterial, irrelevant, and incompetent, and occurring at a time subsequent to the taking up of the land by the witness. The objection was overruled, and an exception was allowed. The witness answered:

"We were in Gagnon's saloon, and Dwinnell said to me, 'Now, if you are ready, we will go down and fix up that business.'

"Q. Go on and tell what occurred then? A. We went down to his office. I believe Gagnon went with us. When we got down there they gave me $180—Gagnon's check for $180—and then we went back up to the saloon, Gagnon and I, and he gave me $20 in currency for my relinquishment."

The witness further testified that after making the entry he had no transaction with Dwinnell until the time of signing the relinquishment. On account of the admission of this testimony of French and the relinquishments of Prather, it is held by the majority of the court that the judgment must be reversed under the authority of the decisions in Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, and United States v. Biggs, 211 U. S. 507, 29 Sup. Ct. 181, 53 L. Ed. 305. If it were conceded that the doctrine of those decisions were applicable to the present case, I submit that upon a record which thus shows the admission of the relinquishments of four of the entrymen and the testimony as to the execution of the same and the receipt of the agreed compensation by each, all without objection, it was harmless error to overrule an objection as to one other of the relinquishments, even if the evidence so received had been incompetent. But in my opinion the rulings in the two cases cited have no application whatever to the case at bar. The purport of what was decided in the Williamson Case is best epitomized in the language of Mr. Justice White as it is found in his opinion in the Biggs Case, page 520 of 211 U. S., page 184 of 29 Sup. Ct. (53 L. Ed. 305). He said:

"The government insisted that the papers (the false oaths taken on final proof) were admissible because the indictment charged a conspiracy to suborn perjury, not only at the time of the application to purchase, but also in the subsequent stage of making the final entry, and that, even if this were not the case, the affidavits made after application were admissible for the purpose of showing the motive which existed at the time the application was made. It was decided that the indictment only charged subornation of perjury at the time of the application. Passing on the alleged contention as to motive, it was held that, in view of the requirements as to an affidavit exacted by the statute to be made at the time of the application as to the

bona fides of the applicant and his intention to buy for himself alone and the absence of any such requirement in the statute as to the final entry, the prohibition of the statute applied only to the condition of things existing at the time of the application to purchase, and did not restrict an entryman, after said application was made, from agreeing to convey to another and perfecting his entry for the purpose after patent or transferring the land in order to perform his contract. It was therefore held that the affidavits made at the final stage of the transaction were not admissible to show motive at the time of the applications to purchase, and that any requirements contained in the rules and regulations of the Land Department making an affidavit essential to show bona fides, etc., at the final stage, were ultra vires and void."

In the Biggs Case the indictment charged that the purpose of the conspiracy was to hire, and, under agreements with entrymen have them pay for, the lands with money of the corporation and have them make entries. It did not charge the date on which said hiring and agreement to make entries were to be made, nor that the entrymen were hired to make applications, nor that said hiring and agreement were prior to any applications. The indictment did not charge that when the applicants made application they had outstanding contracts to sell or were acting under agreement or hire for the defendants. The indictment did not charge noncompliance with the timber and stone act by the entrymen in either its letter or spirit prior to or at the time of the application. The question before the court was whether the indictment charged an offense against the United States. The court held that no indictment for conspiracy to defraud the United States by improperly obtaining title to public lands would lie where the only acts charged were permissible under the land laws, and that the timber and stone acts, while prohibiting the entryman from entering ostensibly for himself but in reality for another, did not prohibit him from selling the claim to another after application and before final action.

It would almost seem unnecessary to point out the features which distinguish the present case from both those cases. The Williamson Case goes no further than to hold that the falsity of the oath of the entryman made under the ruling of the Land Department as part of his final proof to the effect that he seeks title to the land for his own benefit, and not for another, cannot be taken as proof of his motive in making the entry, and this for the reason, and for the sole reason, that after the entry has been made the land laws leave him free to transfer his right to another. That ruling is in no way involved in the case at bar. The Biggs Case charged no unlawful agreement between the conspirator and the entryman prior to the entry, and the court held that the timber and stone acts did not prohibit an entryman from selling his claim to another after the application and before final decision, and that no indictment for conspiracy to defraud the United States by improperly obtaining title to public land would lie where the only acts charged were permissible under the land laws. But the acts charged against the conspirators in the case at bar were "not permissible," and the evidence shows clearly that no negotiations were had between the conspirators and the entryman after the entries were made. All that was proven to have been done after the date of the entries was shown to have been done in pursuance of agreements made prior

thereto and for no other purpose than to carry out those agreements. Each applicant had an agreement with Dwinnell that he was to enter the land solely for the latter's benefit, and was thereafter to execute a relinquishment and to receive his pay from Dwinnell. The government submitted evidence to prove that this was done. The evidence so offered and received proved the commission of the overt acts expressly charged in the indictment, namely, that the agreement between the conspirators and entrymen included not only the making of false oaths in the application, but the execution of relinquishments and the payment of an agreed price therefor. The indictment charges a conspiracy to suborn perjury to be committed by applicants in entering land for the benefit of Dwinnell, one of the conspirators. The testimony which is the subject of the assignments of error was admitted for the purpose of proving this allegation of the indictment and as proof of the acts of Dwinnell in carrying out the agreement with the entrymen and his purpose in procuring them to make the false entries as well as proof to establish the overt acts charged in the indictment. The court admitted it expressly for those purposes. The facts that Dwinnell prepared the relinquishments very shortly after the entries were made and without further negotiations with the entrymen than those which he had with them prior to the time of making the entries, obtained their signatures to the relinquishments, and paid them the sums which he had originally promised to pay them, tended strongly to prove the conspiracy to suborn perjury charged in the indictment.

"It is competent and proper to prove such overt acts because of their bearing upon the evidence of the conspiracy itself and for the further reason that such evidence is proper in considering the punishment to be inflicted." Elliott on Evidence, § 2946.

I submit that it ought not to be held that the effect of the decisions of the Supreme Court in the Williamson Case and the Biggs Case is to deprive the prosecution of the right to prove acts such as these acts, which were shown to have been done in pursuance of the original conspiracy and were so charged in the indictment, but were done after the date of the commission of the perjury suborned by the conspirators, and that from and after the date of the suborned perjury the field of investigation is closed to the government, and no further act of a conspirator may be offered in evidence to show the existence and the intent of the conspiracy. Such, however, is the effect of the opinion of the majority of the court in this case.