CHAPLIN et al. v. UNITED STATES.†

**(Circuit Court of Appeals, Ninth Circuit. · February 5, 1912.)** ˋ

No. 1,877.

1. CONSPIRACY (§ 33*)—DEFRAUDING GOVERNMENT—DESERT LANDS—"ENTRY"—
STATUTES.

The desert land act (Act March 3, 1877, c. 107, 19 Stat. 377 [U. S. Comp. St. 1901, p. 1548]) provides that it shall be lawful for any citizen on payment of 25 cents an acre to file a declaration under oath with the register and receiver of the land district in which any desert land is situated that he intends to reclaim a tract of desert land, and Act March 3, 1891, c. 561, 26 Stat. 1096 (U. S. Comp. St. 1901, p. 1549), requires that, at the time of filing the declaration, the party shall also file a map of the land which shall exhibit a plan showing the mode of contemplated irrigation, which plan shall be sufficient to thoroughly irrigate it, and prepare it to raise ordinary agricultural crops, and shall also show the source of the water to be used. *Held*, that only bona fide entries made with intention to reclaim the land are contemplated; and hence, though the entryman may assign his entry, yet, if he made the same in bad faith or in evasion of the provisions of the law, it constituted a fraud on the government, so that an indictment charging that defendants conspired to make, and cause to be made, false, fraudulent, and fictitious entries of respective tracts of desert land to fraudulently obtain title to and use and possession of such tracts, and performed certain overt acts in furtherance of the conspiracy, it stated an offense punishable by Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676); the term "entry," including not only the preliminary application, but the proceedings as a whole to complete the transfer of title.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 3, p. 2417.]

2. CONSPIRACY (§ 43*)—DEFRAUDING GOVERNMENT—DESERT LANDS—ENTRY—
INDICTMENT.

Where an indictment charged a conspiracy to make and cause to be made, false, fraudulent, and fictitious entries of respective tracts of desert land, and to obtain title thereto and use and possession thereof, it was not defective for failure to allege that defendants ever caused any fraudulent entries to be made, since, as the offense was a conspiracy to defraud the United States, it was not necessary to allege that the entries were in fact made; it being sufficient to allege the unlawful conspiracy and overt acts performed by the conspirators in furtherance thereof.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

3. CONSPIRACY (§ 43*)—DEFRAUDING GOVERNMENT—DESERT LANDS—FRAUDU-
LENT ENTRIES—INDICTMENT.

Where an indictment for conspiracy to defraud the United States by means of alleged fraudulent entries of desert lands charged that defendants were to procure a large number of persons, each to make, subscribe, and swear to before the receiver of the land office at Los Angeles a certain false, fraudulent, and fictitious declaration concerning, and entry of a certain tract of, desert land, and that accused well knew that the declarations were to be made and sworn to for the purpose of making, and causing to be made, false, fraudulent and fictitious entries of the respective tracts of desert land, and for the purpose of fraudulently obtaining title to and use and possession of the respective tracts of such land, the indictment was not fatally defective for failure to allege that de-

---

fendants agreed to procure any person to do all the things essential to making of entries under the desert land act (Act March 3, 1877, c. 107, 19 Stat. 377 [U. S. Comp. St. 1901, p. 1548]), and that the applicants would be induced to file the map and disclose the source of water supply as required by Act Cong. March 3, 1891, c. 561, 26 Stat. 1096 (U. S. Comp. St. 1901, p. 1549), and to pay the 25 cents per acre required as a condition to making an entry, so as to show that, if the conspiracy described had been fully accomplished, the United States would have been defrauded.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79–99; Dec. Dig. § 43.*]

Hanford, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Southern District of California.

Frank N. Chaplin and another were convicted of conspiracy to defraud the United States of the use and possession of the title to certain desert lands, and they bring error. Affirmed.

The plaintiffs in error were convicted upon certain counts of an indictment which charged, in substance, that they, together with certain other persons whose names were unknown to the grand jury, conspired to defraud the United States of the use and possession of and title to certain described desert lands by procuring each of a large number of persons to make under oath and file with the register and receiver of the land office at Los Angeles, Cal., a declaration for, and concerning the entry of a tract of, desert land, which was to state falsely, among other things, that the person so making said declaration intended to reclaim the desert land claim by conducting water upon the same in accordance with acts of Congress specified in the indictment, relating to the entry, reclamation, and acquisition of desert lands, when in truth and in fact, as the defendants would well know, the said person would not intend to reclaim said land in the manner stated or at all; that as part of the conspiracy the defendants were also to procure and induce said large number of persons and others, after making said false declarations, to make fraudulent affidavits concerning expenditures made in the irrigation, reclamation, and cultivation of the respective tracts of land described in their false declarations; that, in furtherance of said conspiracy, the defendants committed certain described overt acts, and that certain of the defendants who were named did, on December 28, 1905, cause, procure, and persuade and induce an affiant to make corruptly, and swear to and file in the said land office, a certain fraudulent, untrue, illegal, and fictitious affidavit. The affidavit was then set forth in full. The plaintiffs in error demurred to the indictment on the ground that the acts charged therein were not sufficient to constitute the commission of a public offense, and because the indictment was duplicitous, and the counts thereof uncertain, and that punishment for the offense therein charged was barred by the provisions of section 1044 of the Revised Statutes (U. S. Comp. St. 1901, p. 725). The same grounds were presented in a motion in arrest of judgment.

Le Compte Davis, Davis & Rush, J. M. Eshleman, Edwin A. Meserve, Oscar A. Trippet, and Peter Dunne, for plaintiffs in error.

Oscar Lawler, Special Asst. Atty. Gen., and A. I. McCormick, U. S. Atty.

Before GILBERT and MORROW, Circuit Judges, and HAN-. FORD, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GILBERT, Circuit Judge (after stating the facts as above). The question presented to this court is whether the indictment charges the commission of a crime.

[1] The contention of the plaintiffs in error is that, inasmuch as an entryman of land under the desert land acts has the right to assign his entry as soon as it is made, the plaintiffs in error committed no crime in conspiring to induce an entryman to make an entry when he had the actual present intention to assign his right to another; that the entryman has the right to make an entry with the intention to assign; that the land office has no right to exact from him an affidavit which renounces such right; that, if it does exact such an affidavit, the entryman does not commit perjury in making it, and the entry which he makes is legal, no matter what his intention may be. The act to provide for the sale of desert lands (19 Stats. 377) declares:

"That it shall be lawful for any citizen of the United States, or any person of requisite age who may be entitled to become a citizen, and who has filed his declaration to become such, and upon payment of twenty-five cents per acre to file a declaration under oath with the register and receiver of the land district in which any desert land is situated, that he intends to reclaim a tract of desert land. * * *"

The act of March 3, 1891 (26 Stat. 1096), makes the further provision that at the time of filing the declaration hereinbefore required the party shall also file a map of such land, which shall exhibit a plan showing the mode of contemplated irrigation, and which plan shall be sufficient to thoroughly irrigate and reclaim said land, and prepare it to raise ordinary agricultural crops, and shall also show the source of the water to be used for irrigation and reclamation. These two provisions clearly mean that the entryman can make no entry except a bona fide entry with the intention to reclaim the land, that he shall not only have bona fide such definite intention, but that he shall have in mind a plan of contemplated irrigation, as well as an adequate source of water. Now, the argument is that because the act of 1891 recognizes the right of assignment, and the Supreme Court in United States v. Hammers, 221 U. S. 220, 31 Sup. Ct. 593, 55 L. Ed. 710, has held that an assignment may be made within 12 days after the date of the entry, an actual intention on the part of the entryman to reclaim is no longer required as a condition to his right to make the entry. It is said that, if he could assign within twelve days, he could assign within 12 seconds after making his entry, and, if he could do that, the intention with which he made his entry is of no importance. We cannot so construe the statutes. It was clearly not the intention of Congress to offer the desert lands to entry to persons who were to be dummies for others, or to persons who had no intention to occupy the land for the purposes for which it was offered, but whose intention was to hold it temporarily merely for the purposes of speculation or for the benefit of some other person. Why does the act of Congress require the entryman to take the solemn oath that he intends to reclaim the land, unless that intention is of the very essence of the condition upon

which his entry is permitted? He certainly cannot be said to intend to reclaim through the future acts of his assignee. He can know nothing of what his assignee may do, nor can he be made answerable for his assignee's act or failure to act. His assignee also may intend to assign to another. There is substantial basis for requiring good faith in the entryman in the resulting security to the government that its purpose of reclamation shall not be frustrated by the acquisition of colorable rights. The desert lands are not offered to settlers for speculation, nor for what money they will bring to the government, but they are offered to settlement by Congress in the exercise of authority to provide for the common welfare, and in the discharge of a duty to develop the agricultural resources of the United States. Will it be asserted that an entry of desert land may lawfully be made without the oath required by the statute, or that Congress intended that an entryman, in order to secure his right to make an entry without the intention to reclaim the land, should first commit perjury by taking a solemn oath that he intended to reclaim it? In United States v. Keitel, 211 U.·S. 370, 29 Sup. Ct. 123, 53 L. Ed. 230, the court said of the purpose and necessary effect of the conspiracy there under consideration that it was "to obtain the lands * * * by the suppression of facts which, had they been disclosed, would have rendered the acquisition impossible." What the court there said aptly describes the present case. On the facts charged in the indictment here the entries could only have been made by means of false oaths. If the applicants had stated the truth, their applications would have been rejected.

The cases of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, and United States v. Biggs, 211 U. S. 507, 29 Sup. Ct. 181, 53 L. Ed. 305, cited by the plaintiffs in error, decide no principle applicable to the case at bar. In the Williamson Case it was held that under the timber and stone act, after an applicant has made his preliminary sworn statement concerning the bona fides of his application, and the absence of any contract or agreement in respect to the title, he is not required to swear again to such facts on his final proof, and that a regulation of the land commissioner exacting such an additional statement at the time of final hearing is invalid. In the Biggs Case it was held that, while the timber and stone act prohibited an entryman from entering land ostensibly for himself but in reality for another, a conspiracy formed to induce an entryman who has made in good faith his application to purchase subsequently to agree to convey his interest in the land was no violation of the statute. In Adams v. Church, 193 U. S. 510, 24 Sup. Ct. 512, 48 L. Ed. 769, under the provisions of the timber culture act, which act, as does the desert land act, requires the applicant to make affidavit that the entry is made for the cultivation of timber for his exclusive use and benefit, and that the application is made in good faith and not for the purpose of speculation or for the benefit of another person, the court recognized the right to assign "if the entryman has complied with the statute and made the entry in good faith in accordance with the terms of the law and the oath required of him upon

making such entry, and has done nothing inconsistent with the terms of the law." In brief, it is clear from the authorities that an entry on the public lands made not in good faith, or in evasion of the provisions of the law, is a fraud upon the government, and a combination of two or more persons to induce others to make such entries is a conspiracy punishable by section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676).

[2] It is contended that the indictment is fatally defective for failure to allege that the defendants accused therein ever caused any fraudulent entries to be made, or ever took any steps or did any act to that end. But it was not necessary to allege that such entries were in fact ever made. The offense charged was a conspiracy to defraud the United States. The nature and object of the conspiracy, and the means whereby the conspirators intended to carry out their scheme, were set forth. The offense was complete when the unlawful conspiracy was formed and the plans were adopted. 'There remained, however, a locus penitentiæ until something more was done. Instead of abandoning their conspiracy, the indictment alleges that the conspirators performed certain overt acts. In the counts on which the plaintiffs in error were found guilty, they were charged with making certain false and fraudulent affidavits of expenditures which were sworn to have been made on desert land entries within the first year after the date thereof, which affidavits were set forth and were alleged to have been sworn to before the receiver of the land office, and they contained the jurat and the signature of such officer. These overt acts were within the scope of the conspiracy as charged, and they tended to accomplish its object. In United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698, it was said:

"The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone."

[3] It is suggested, not in the briefs or argument of counsel, but by a member of this court, that the demurrer should have been sustained for the reason that it is not alleged in the indictment that the plaintiffs in error agreed to procure any person to do all the things essential to the making of entries under the Desert Land Law; that if the conspiracy, as it is described, had been fully accomplished, the United States could not have been defrauded, because no colorable right to possession of any public land could have been initiated, since the indictment does not charge that the applicants were to be induced to file the map and disclose the source of water supply, as required by the act of 1891, or to pay the 25 cents per acre required as a condition to making an entry. We do not think that the indictment is defective for the omission of these allegations. It is distinctly alleged therein that the plaintiffs in error were to procure a large number of persons each to make, subscribe, and swear to before the register and receiver of the land office at Los Angeles a certain false, feigned, fraudulent, and fictitious "declaration concerning, and entry of," a certain tract of desert land, and in the clause charging guilty knowledge it alleges that the accused well knew that the declarations were

to be made and sworn to "for the purpose of making and causing to be made, false, fraudulent, fictitious entries of the respective tracts of desert lands * * * and for the purpose of fraudulently obtaining title to and use and possession of said respective tracts of desert lands." The indictment sufficiently advised the defendants therein of the charge which they were called upon to meet—a conspiracy to induce persons to make fraudulent entries of land under the desert land acts. To make such entries, there was necessarily implied the performance of all the acts required by law, the filing of the sworn application, the presentation of the map, and the payment of the specified installment of the purchase money. In Dealy v. United States, 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545, the indictment charged that the conspiracy was to be carried into effect "by means of false, feigned, illegal and fictitious entries." The court held that an indictment so charging was sufficient, since the word "entry" had, in homestead cases, a settled, technical meaning, and that an entry under the homestead law in popular understanding means not only the preliminary application, but the proceedings as a whole to complete the transfer of title.

The judgment is affirmed.

HANFORD, District Judge (dissenting). The assignments of error appear to have been voluminous, but by a stipulation all have been abandoned except the particular assignments which assail the validity of the indictment, so that the only questions which this court is required to decide are those affecting the sufficiency of the indictment to charge a crime under section 5440, and whether the indictment itself shows affirmatively that the right of the government to prosecute is barred by the statute of limitations.

A conspiracy to be criminal within the terms of section 5440, U. S. R. S., must be an agreement between two or more persons to accomplish a definite object, and that object must be one or the other of two things, viz.: (1) To commit an offense against the United States. (2) To defraud the United States in any manner or for any purpose.

This indictment excludes from consideration the crime of conspiracy to commit a distinct offense—e. g., subornation of perjury—because in plain words the object is declared to be to defraud the United States. And the brief filed in behalf of the government states that:

"The indictment charges a conspiracy to defraud the United States of the possession and title to public lands. This, then, is the object, and is the complete offense."

This crime cannot be well or sufficiently pleaded in the exact words of the statute. Evans v. United States, 153 U. S. 587, 14 Sup. Ct. 934, 38 L. Ed. 830. A conspiracy to defraud the United States is a statutory crime, and a valid indictment, to charge that crime, must set forth a scheme to defraud the government with sufficient particularity to enable the court to judge whether the agreement, if successfully accomplished by any means or for any purpose, would in fact

defraud the United States. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516. An agreement to do, or cause others to do, harmless things, cannot be made criminal by merely declaring it to be fraudulent; but, in order to sustain an indictment for such a conspiracy, the court must find in the agreement a criminal intent to perpetrate an actual or legal fraud. United States v. Biggs, 211 U. S. 521, 29 Sup. Ct. 181, 53 L. Ed. 305. I do not mean to assert that a fraud must necessarily involve pecuniary loss. Any unwarranted interference with the operations of the government through its constituted agencies, or misappropriation of government property, even by wrongfully holding temporary possession thereof, or the acquisition of a merely colorable right to property belonging to the government, may constitute the kind of fraud which section 5440 comprehends; and I hold that a mala fide entry of public land accomplished by means of simulated compliance with the provisions of the desert land laws prescribing the manner in which inchoate rights may be acquired would be a fraud upon the government, and that an agreement between two or more persons to effect entries of land in that manner would be a criminal conspiracy subject to indictment under that section.

In the consideration to be given to the material issues, the case for the government is not to be deemed as strengthened or aided by the verdict of the jury, because the sufficiency of the indictment was controverted by a demurrer which was overruled and exceptions taken before pleas were entered, and the decision of the court overruling the demurrer has been assigned as error. The indictment is complex and so overburdened with repetitions of phrases that its meaning is obscure, so that, in order to judge of its merits, it must be condensed and clarified. That part which sets forth the means which the accused agreed to employ to accomplish the object of the alleged conspiracy alleges that their scheme was to induce a large number of persons to make and file declarations in the form prescribed for entering desert land claims, which declarations are characterized by the phrases:

"A certain false, feigned, fraudulent and fictitious 'declaration' concerning and entry of a certain tract of desert land. * * * The said false, feigned, fraudulent, untrue and fictitious declarations concerning entries of said desert lands of the United States. * * * Said false, feigned, fraudulent and fictitious 'declarations' concerning and entries of said tracts of desert lands."

The words "entry" and "entries" in these phrases are confusing, they mar the sentences in which they occur, and do not express, or help to express, any definite idea. Following an allegation of the continued existence and process of execution of the conspiracy, the indictment contains this clause:

"And which said conspiracy, combination, confederation, and agreement was to be accomplished and carried into effect by causing, inducing, and procuring a large number of persons, to wit, one hundred persons, whose names are to the grand jurors unknown, to make, subscribe, and swear to certain false, feigned, fraudulent, untrue, illegal, and fictitious entries of, and declarations concerning, said desert lands, and by filing, and causing to

be filed, with the register and receiver of the United States Land Office for the said Los Angeles land district, the said false, feigned, fraudulent, untrue, illegal and fictitious declarations concerning and entries of said desert lands when so made, subscribed and sworn to as aforesaid."

This section of a complicated compound sentence fairly illustrates the style of the entire pleading. Succinctly stated, the charge of the indictment is: That the defendants with others did unlawfully conspire to defraud the United States of the use and possession of and title to certain desert lands of the United States, by inducing each of a large number of persons to willfully and corruptly make, subscribe, and swear to a fraudulent and fictitious "declaration" for entry of a certain tract of arid land subject to entry under the act of Congress of the United States approved March 3, 1877, entitled "An act to provide for the sale of desert lands in certain states and territories" (19 U. S. Stat. 377; 6 F. S. A. 392 [U. S. Comp. Stat. 1901, p. 1548]), as amended by the act of Congress approved March 3, 1891, entitled "An act to repeal timber culture laws and for other purposes" (26 U. S. Stat. 1096; 6 F. S. A. 395 [U. S. Comp. Stat. 1901, p. 1549]), such declaration to be made for the purpose of making fraudulent entries of the respective tracts of desert lands, and to be filed with the register and receiver of the United States Land Office for the Los Angeles land district for the purpose of inducing said officers to receive and act upon them as if the same were true and made in good faith. And that each of such declarants and other persons were to be induced to make, swear to, and file in the land office fraudulent affidavits concerning expenditures made in the irrigation, reclamation, and cultivation of the respective tracts of land described in said false declarations. Each of the several counts of the indictment, upon which the plaintiffs in error were convicted charges an overt act to effect the object of the conspiracy.

According to the indictment, the means for defrauding the United States which the plaintiffs in error and others agreed to adopt may be divided into two classes, viz.:

(1) The procuring of persons to make, swear to, and file declarations in the form required for making entries of public land under the desert land laws, each containing a false statement that the declarant intended to reclaim the tract of land by conducting water thereon for the purpose of irrigating the same.

(2) To induce the persons making such declarations and others to make, subscribe, and swear to in simulated and pretended compliance with the requirements of the desert land laws of fraudulent affidavits concerning expenditures made in the irrigation, reclamation, and cultivation of the respective tracts of land described in said false declarations.

As the indictment does not allege that the conspirators agreed to do, or procure others to do anything else, the court has no right to surmise that they adopted or assented to the use of additional means. The indictment does not in words, nor by necessary inference, charge that the object of the conspiracy was to obtain for the conspirators themselves any benefits or advantages, nor in any wise suggest that

any persons were to be beneficiaries. It does not contain a broad charge that entries of any desert lands were to be actually effected; nor does it charge specifically that all of the necessary steps to effect an entry of any tract of land were to be taken or caused to be taken. To complete an entry, whereby any right or color of right could be secured under the desert land laws, other things in addition to the making and filing of a declaration are essential, viz.: The fourth section of the act as amended is mandatory in requiring:

"That at the time of filing the declaration hereinbefore required the party shall also file a map of said land which shall exhibit a plan showing the mode of contemplated irrigation, and which plan shall be sufficient to thoroughly irrigate and reclaim said land, and prepare it to raise ordinary agricultural crops, and shall also show the source of the water to be used for irrigation and reclamation."

And the first section of the act is equally mandatory in exacting payment of 25 cents per acre for all of the land to be claimed, as a prerequisite to the filing of a "declaration." The payment, therefore, is the initial step in the order of procedure to establish an inceptive right.

In order to sustain the validity of this indictment, it is necessary to construe it, so as to put into it a positive accusation that the plaintiffs in error conspired to induce persons to secure colorable rights by making fraudulent entries of land under the desert land law. This is the vital point in the case, for, unless entries were to be effected, the alleged scheme lacked the essential of practicability for any purpose of fraud. Instead of charging in simple phrase a conspiracy to induce persons to make entries, the meaning of the sentences of this indictment containing the words "entry" and "entries" is in every instance restricted by qualifying words. The making of an entry of public land as a consummated transaction is one thing; the making of a "declaration" concerning an entry, or for the purpose of making an entry, is different, because the qualifying words in the latter phrase restrict the meaning of the sentence in which it occurs in a way to exclude the idea of a consummated transaction. I cannot assent to a reconstruction of the indictment by rejecting qualifying words limiting the meaning of sentences to cure a fatal defect. If the alleged agreement had been completely executed and the alleged conspiracy fully accomplished, the United States could not have been defrauded thereby, because no colorable right to the possession, use of, or title to any public land could have been initiated by the filing in the land office of mere declarations, and the government would have been unhampered in its right to dispose of all the lands comprised in such declarations and convey unclouded titles thereto. The procuring and filing in the land office of affidavits concerning expenditures for the reclamation of lands to which no rights had accrued by entries could not be effective means of defrauding the government. It is to be especially noted that by the allegations of the indictment the affidavits concerning expenditures were to refer specifically to expenditures in the reclamation of the particular lands to be described in the false declarations, and the plaintiffs in error cannot be convicted

of the crime of conspiring to defraud the government by undertaking to procure affidavits generally affecting desert land claims, because they have not been accused of having agreed to carry on a general business as affidavit brokers.

This case differs from the cases of Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90, and Mays v. United States, 179 Fed. 610, 103 C. C. A. 168. The opinion in each of those cases shows that the indictment charged a conspiracy to defraud the United States by a dishonest scheme adequate, if not frustrated, to have secured, or at least to have clouded, the title to large tracts of public land.

The defect in this indictment becomes glaring by contrasting it with the indictment which was upheld by the Supreme Court in Dealy v. United States, 152 U. S. 544, 14 Sup. Ct. 680, 38 L. Ed. 545. It appears by the opinion in that case that the indictment specified the means for defrauding the United States to be "false, feigned, illegal, and fictitious entries under the homestead laws of the United States." That decision is an authority for giving to the word "entry" its popular signification in land office practice comprehending all the steps essential to consummation of a right to a tract of public land. Necessarily, however, the significance of the word must be controlled by its place in, and association with, other words and phrases composing a sentence. In this indictment it appears to have been used to indicate a document which was to be made, subscribed, sworn to, and filed.

I am unable to concur in the decision affirming the validity of the indictment under which the plaintiffs in error were convicted.