HOUSTON et al. v. UNITED STATES. †

(Circuit Court of Appeals, Ninth Circuit.   October 13, 1914.)

No. 2288.

1. CONSPIRACY (§ 43*)—INDICTMENT—AVERMENT OF OVERT ACT.
An indictment under Rev. St. § 5440 (Comp. St. 1913, § 10201), for conspiracy to defraud the United States, is sufficient if it alleges the unlawful scheme and an act done by one of the conspirators which had for its purpose the furtherance of such scheme without alleging the manner in which it tended to effect that purpose. Nor is such an indictment defective because it fails to describe in detail the means by which the object of the conspiracy was to be attained.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. § 43.*]

2. CONSPIRACY (§ 43*)—CRIMINAL PROSECUTION—EVIDENCE.
Under an indictment charging defendants as individuals with conspiracy to defraud the United States by means of fraudulent and collusive bids for the furnishing of coal, evidence was competent which showed that the bids were made in the name of corporations of which defendants were officers and were signed by defendants as such officers.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. § 43.*]

3. CONSPIRACY (§ 45*)—CRIMINAL PROSECUTION—EVIDENCE.
On the trial of a defendant charged with conspiracy to defraud the United States, a letter written by defendant, who was secretary of a corporation, to a bank authorizing an employé to sign checks on behalf of the corporation, held admissible as tending to corroborate other evidence that the employé was also authorized to indorse checks made payable to the corporation.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. § 45.*]

4. CONSPIRACY (§ 43*)—CRIMINAL PROSECUTION—EVIDENCE.
Under an indictment under Rev. St. § 5440 (Comp. St. 1913, § 10201), charging a conspiracy to defraud the United States, it was not error to admit evidence of other overt acts than those specifically named in the indictment.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. § 43.*]

5. CRIMINAL LAW (§ 150*) — LIMITATION OF PROSECUTION — CONSPIRACY TO DEFRAUD THE UNITED STATES.
Where a conspiracy to defraud the United States was formed more than three years prior to the indictment, and acts in pursuance thereof were done both prior to and within the three years' prosecution therefor under Rev. St. § 5440 (Comp. St. 1913, § 10201), it is not barred by the limitation imposed by Rev. St. § 1044, as amended in 1876 (Comp. St. 1913, § 1708).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. § 150.*]

6. CONSPIRACY (§ 33*)—WHAT CONSTITUTES.
Under Rev. St. § 5440 (Comp. St. 1913, § 10201), relating to conspiracy to defraud the United States, the offense consists of the unlawful scheme

upon which the minds of conspirators have met, together with any act to effect the object of the conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Criminal prosecution by the United States against Charles E. Houston and John H. Bullock. Judgment of conviction, and defendants bring error. Affirmed.

The plaintiffs in error were convicted of conspiracy under section 5440 of the Revised Statutes. The indictment alleged, in substance, that on or about April 1, 1908, at Seattle, in the state of Washington, the defendants did willfully, knowingly, and unlawfully and feloniously conspire, combine, confederate and agree together to defraud the United States of divers large sums of money, and to bar the United States of its legal remedies to recover the moneys of which it was to be defrauded, and further to defraud and deceive the officers of the United States, and to defraud the United States of the benefits which would have resulted from honest and competitive bids and proposals to contract for the furnishing and sale to the United States of coal. The subject-matter of said conspiracy and the objects thereof, and the means by which the same were to be effected, were as follows: On or about March 10, 1908, the United States, acting through the Quartermaster for the Department of the Columbia of the United States Army, published and circulated an advertisement inviting bids and proposals to contract for the furnishing and sale to said United States of certain large quantities of coal which the United States desired to purchase for governmental use during the fiscal year commencing July 1, 1908, and ending June 30, 1909, at those certain military posts known as Ft. Davis, Ft. St. Michael, and Ft. Liscomb, all situated in the District of Alaska, which bids and proposals to contract were to be submitted to the said Chief Quartermaster on April 10, 1908; that the principal object of said conspiracy was to induce the United States to award and let contracts for the purchase of coal and to purchase and pay for said coal at grossly exorbitant and fraudulent prices, whereby the United States should be defrauded of large sums of money for the use and benefit of said conspirators, which object was to be effected and consummated by means of collusive, dishonest, and fraudulent bids and proposals to contract for the furnishing of coal, which bids and proposals to contract should be ostensibly competitive but in fact collusive, dishonest, and noncompetitive, and for grossly exorbitant prices to be secretly agreed upon by said conspirators; that it was also one of the objects of said unlawful conspiracy that, after the United States should have been thus defrauded, the true facts in the premises should be concealed from the United States, whereby the United States should be defrauded of its legal remedies to recover the moneys of which it should have been defrauded, which object was to be effected and consummated by means of false, fraudulent, and fictitious vouchers and entries, and books of account relating to the disbursement and use by said conspirators of the moneys of which the United States was to be defrauded as aforesaid. And the indictment charges that said unlawful conspiracy has, at all times since April 1, 1908, been furthered and continued in force by each of said conspirators.

The indictment alleges as overt acts: (1) That after the formation of said conspiracy and during the continuance thereof, and to effect the object thereof,

said John H. Bullock on August 13, 1908, at Vancouver, Wash., did knowingly, unlawfully, and corruptly induce, persuade, and cause one John E. Baxter as Quartermaster of the United States Army to issue, and the said John E. Baxter did issue, a certain check or warrant drawn upon the First National Bank of Portland, bearing date August 13, 1908, in favor of John J. Sesnon Company, for the sum of $39,163.50, which check was subscribed by said Quartermaster and was for funds and money of the United States, then and there on deposit in the First National Bank of Portland, Or.; (2) that on September 1, 1908, at Seattle, Wash., the said Bullock did knowingly, unlawfully, and corruptly induce, persuade, and cause one Frank A. Kane as agent of said John J. Sesnon Company, to indorse and negotiate said check, which said Kane then and there did, and which check was thereafter, on September 2, 1908, duly paid by said First National Bank of Portland, Or., out of the aforesaid funds of the United States; (3) that on August 13, 1908, at Vancouver, Wash., said Bullock corruptly induced and persuaded and caused one John E. Baxter, Quartermaster of the United States Army, and the said Baxter did issue a certain check or warrant drawn upon the First National Bank of Portland, bearing date August 13, 1908, in favor of John J. Sesnon Company for the sum of $53,878.50, which warrant was subscribed by said Baxter as Quartermaster and was for funds and moneys of the United States then and there deposited and in the said First National Bank; (4) that on September 1, 1908, at Seattle, Wash., said Bullock knowingly, unlawfully, and corruptly induced, persuaded, and caused Frank A. Kane as agent of said John J. Sesnon Company to, and the said Frank A. Kane then and there did, indorse and negotiate said check or warrant, which check or warrant was thereafter, and on September 2, 1908, duly paid by the First National Bank of Portland, Or., out of the aforesaid funds of the United States.

Samuel H. Piles, James B. Howe, Charles H. Farrell, James H. Kane, and Wickliffe B. Stratton, all of Seattle, Wash., for plaintiff in error Houston.

O. L. Willett and Frank Oleson, both of Seattle, Wash., for plaintiff in error Bullock.

B. D. Townsend, of Washington, D. C., and Glenn E. Husted, and F. C. Rabb, both of Portland, Or., Special Asst. Atty. Gen., for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The indictment charges that the conspiracy was entered into on April 1, 1908, and that it has at all times since that date been "furthered and continued in force" by each of said conspirators. Four overt acts are alleged to have been done in August and September, 1908. The substance of the objections to the indictment is that it contains no allegation that bids were ever actually interposed by the conspirators, or what such bids were, that the crime could not be completed without the initial overt act of interposing bids by the cooperation of the conspirators, and that all overt acts must be alleged. We find no merit in these objections.

[6] Under section 5440, the offense consists of the unlawful scheme upon which the minds of the conspirators have met, together with an act to effect the object of the conspiracy. The allegation that a single act was done by one of the conspirators, which had for its purpose the

furtherance of the unlawful scheme, completes the allegation of the offense, and the rule is well settled that it need not appear upon the face of the indictment that the overt act was such that it could be seen to have a necessary or logical relation to the conspiracy charged. It is enough if the indictment allege that it has that effect. In brief, it is sufficient to state the overt act without alleging the manner in which it tended to effect the purposes contemplated. We so held in United States v. Benson, 70 Fed. 591, 17 C. C. A. 293, following United States v. Sanche (C. C.) 7 Fed. 715, United States v. Donau, 11 Blatchf. 168, Fed. Cas. No. 14,983, and the same has been held in Gantt v. United States, 108 Fed. 61, 47 C. C. A. 210, and United States y. Shevlin (D. C.) 212 Fed. 343, and we find no decision to the contrary.

But it is said that by the decision of the Supreme Court in Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, a new rule of pleading has been educed, that, inasmuch as it was held in that case that the offense defined in section 5440 is not complete until an overt act is done to carry out the purpose of the conspiracy, the averments by which the overt act is pleaded must upon their face show that the act was so related to the conspiracy as necessarily to be a portion thereof. We do not so understand that decision. The court was there dealing with the question whether an overt act performed in one district by one of the parties who had conspired in another district would give jurisdiction to the court in the district where the overt act was performed as to all the conspirators. It was held that, under section 5440, an overt act was necessary to complete the offense. No new rule of pleading was announced, and it does not follow from any principle there affirmed that an indictment in a conspiracy case which would be good and valid before that decision should now be held defective. Under a rule of pleading such as is now contended to have been established by that case, the very indictment which in that case the court sustained would have been subject to objection on the very ground that is here urged. For that indictment contained no allegation which showed that the overt acts pleaded therein would tend to effect the object of the conspiracy. In the opinion the court said:

"The powers of the Land Office were necessarily to be invoked and proceedings therein instituted and prosecuted by acts innocent indeed of themselves, taking only criminal taint from the purpose for which they were done."

In that case the indictment charged conspiracy to defraud the United States of public lands in lieu of lands within forest reserves established in Oregon and California, by means of false and fraudulent proofs, whereby the conspirators were to obtain fraudulently from those states title to and possession of school lands within the limits of such reserves, which were open to purchase from those states by residents thereof upon appropriate applications supported by affidavit showing the resident's qualifications to make such purchase, and his intention to purchase in good faith for his own benefit, and that he had made no

contract to sell the claim, the applications to be made in the names of fictitious persons and in the names of persons not really desiring or qualified to purchase said lands, the names of the latter class to be procured by paying or causing to be paid to them small sums of money and by falsely representing or causing to be represented to some of them that they were merely disposing of their rights to purchase such school lands. In the opinion it is said:

"Most of the overt acts charged consisted in the filing in the General Land Office by Dimond, as attorney for Hyde, his appearance in different selection cases, in some of which he urges and sets forth the reasons for favoring a speedy action. In counts 35 to 40, both inclusive, the overt act charged is the payment of money by Benson to either Valk or Harlan, alleged in the indictment to be salaried officials of the General Land Office and charged with duties pertaining to the exchange of lands of private claim or ownership included in a forest reserve or other public land. Two overt acts are charged against Hyde, one of which was committed on July 29, 1903, by causing to be transmitted by mail from the United States Land Office at Vancouver to the Commissioner of the General Land Office at Washington a written notification to the Commissioner, signed by Hyde for C. W. Clarke, that the latter appealed to the Secretary of the Interior from a certain decision of the Commissioner, with an assignment of errors, and the second of which was that Hyde, on March 31, 1902, caused to be presented by the hand of Dimond a paper signed by him, Hyde, notifying the Commissioner that one S. E. Kieffer was authorized and appointed as Hyde's agent to post notices in the ground described in a certain application and to make affidavit of posting."

Nor is the indictment defective for its failure to describe in detail the means by which the object of the conspiracy was to be attained. It was not necessary to allege what the bids were, or that they were actually made. The bids were but a portion of the means whereby the unlawful purpose was to be accomplished. The indictment charges, not that the object of the conspiracy was to interpose collusive and fraudulent bids, but that it was to defraud the United States of the money that should be paid as the purchase price of coal. It is enough if such an indictment contain a general description of the means. Crawford v. United States, 212 U. S. 183, 192, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Dealy v. United States, 152 U. S. 539, 543, 14 Sup. Ct. 680, 38 L. Ed. 545. And a general allegation of the continuance of the conspiracy is an averment of a substantive fact and is sufficient. Dealy v. United States, supra; United States v. Barber, 219 U. S. 72, 78, 31 Sup. Ct. 209, 55 L. Ed. 99.

We think that the averments of the indictment were sufficient to advise the defendants of the nature of the offense with which they were charged, and as to which they were required to prepare their defense, and sufficient to sustain a plea of former conviction or acquittal in a case of a second indictment for the same offense. Said the court in Cochran & Sayre v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 630 (39 L. Ed. 704):

"But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar

offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

In Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, it was held that an indictment charging the accused with a conspiracy to commit the crime of subornation of perjury in proceedings for the purchase of public lands was sufficient, although the precise persons to be suborned and the elements essential to the commission of the crimes were not particularized.

Error is assigned to the admission in evidence of the statement made by Jarvis to Douglas, in March or April, 1909, that the $6,892 payment made to him by Houston was "the rake-off on the government coal contract." It is said that this evidence was inadmissible, because the statement was made after the object of the conspiracy had been completely consummated. To this it is to be said that it does not appear that the conspiracy had been consummated at that date. There was evidence of acts done in carrying it out as late as May 8, 1909. Again, the statement was made during the time the second object of the conspiracy was being effected. It was admissable to show that Jarvis was a member of the conspiracy, and it was for that purpose that it was admitted. As to that evidence, the court charged the jury that, before they could consider the statement of Jarvis as being the statement or act of the other defendants, it must have been made or done during the life of the conspiracy, and it must have been a statement or act in furtherance of, and to effect the object of, the conspiracy, and that, if the conspiracy was consummated and completed before that date, nothing that Jarvis said could affect either of the defendants.

[2] We find no error in the admission of evidence of the acts of the corporations of which the defendants were officers, under an indictment which charged the defendants as individuals. The evidence so admitted was that the conspirators interposed bids in the name of their respective corporations, and signed them as officers of the corporation. The indictment did not charge that the bids were to be signed by the individuals. It charged that the scheme of the conspiracy was to be carried out by fraudulent and collusive bids without stating what names were to be subscribed thereto, and it charged that the fruits of the conspiracy were to accrue to the defendants "or to the corporations represented by them." When Bullock signed the bids in the name of Sesnon Company, by himself as secretary, he committed an act within the allegations of the indictment, and proof thereof was properly admitted.

[3] It is contended that it was error to admit in evidence a letter addressed by Bullock to the Dexter Horton National Bank, authorizing Frank A. Kane to sign checks on behalf of the John J. Sesnon Company. The objection made to the letter was that it was immaterial and not included in the indictment. It is now urged that the letter was subject to objection because it did not authorize Kane to indorse checks payable to the Sesnon Company, but only to sign checks issued by that company. The testimony of the teller of the bank was that the letter was authority to Kane to indorse or sign checks or other

negotiable papers for the Sesnon Company. Kane, who was called
as a witness did not in fact deny that he had authority to indorse such
checks. He said that during June, July, August, September, and Octo-
ber of 1907 and 1908, he indorsed the checks payable to the Sesnon
Company, that arrived at the Seattle office. When asked under whose
authority he did so, he answered that he could not say that he ever
had any authority for doing it. "It was just a custom," and he testi-
fied that in the winter months he did it under Bullock's supervision,
and that in the summer months, in Bullock's absence, he continued to
indorse them as before. We think the letter was properly admitted
as tending to corroborate the evidence that Bullock authorized Kane
to indorse the checks. The checks in question were drawn in favor
of the John J. Sesnon Company, and were indorsed "John J. Sesnon
Company by Frank A. Kane, Agt."

[4] We find no error in the assignment that evidence was admitted
of overt acts other than those which were pleaded in the indictment.
No decision of a federal court is cited in which it has been held that
in such a case the prosecution is limited to proof of the overt acts
which are specifically charged. The contrary has been held in United
States v. Howell (D. C.) 56 Fed. 21; United States v. Burkett (D. C.)
150 Fed. 208; and United States v. Eccles (C. C.) 181 Fed. 906. In
Bannon & Mulkey v. United States, 156 U. S. 464, 469, 15 Sup. Ct.
467, 469 (39 L. Ed. 494), the court said:

"To require an overt act to be proven against every member of the con-
spiracy, or a distinct act connecting him with the combination to be alleged,
would not only be an innovation upon established principles, but would ren-
der most prosecutions for the offense nugatory. It is never necessary to set
forth matters of evidence in an indictment."

In Heike v. United States, 227 U. S. 131, 145, 33 Sup. Ct. 226, 229
(57 L. Ed. 450) the court said:

"Another objection to evidence concerned the admission of testimony that
the same course of conduct was going on long before the date in the indict-
ment when it is alleged that the defendants conspired. The indictment, of
course, charged a conspiracy not barred by the statute of limitations, but it
was permissible to prove that the course of fraud was entered on long before
and kept up."

At common law and in the absence of statutory changes thereof, it
is not necessary to plead any overt act, but all overt acts may be shown
in evidence as tending to prove the conspiracy, and its object. State
v. Stockford, 77 Conn. 227, 58 Atl. 769, 107 Am. St. Rep. 28; State
v. Mayberry, 48 Me. 218; Ochs et al. v. People, 124 Ill. 399, 16 N.
E. 662; People v. Brickner, 15 N. Y. Supp. 528. The language of
section 5440 indicates that Congress did not intend to change the com-
mon-law rule further than to make it essential to the offense described
therein that there should have been at least one overt act to effect the
object of the conspiracy.

There are other assignments of error as to the admission of evi-
dence. We do not deem it necessary to discuss them. We find no
error in any of them.

Error is assigned to the refusal of the court to direct a verdict for the defendants at the close of the testimony. One of the grounds of the motion was the insufficiency of the evidence to sustain a verdict against the defendants. We have carefully considered the evidence, and we think the court was fully justified in submitting the case to the jury.

[5] Another ground of the motion was that the prosecution of the offense charged was barred by the statute of limitations. It is urged that the statute commenced to run on April 21, 1908, the date when the contracts were let for furnishing the coal for Forts Davis and St. Michaels, or that, at the latest, the statute began to run on July 13, 1908, the date when Bullock certified to the vouchers. The object of the conspiracy was alleged to be to defraud the United States, and there was proof of acts done by the defendants, which showed that the purpose of the conspiracy was not fully consummated when the vouchers were certified to. That act was followed by others. On August 13, 1908, at the instance of Bullock, Baxter issued the checks; on September 1st, Kane, under authority from Bullock, indorsed the checks on behalf of John J. Sesnon Company; and on September 2d, the bank paid the checks. The indictment was found on August 12, 1911. Where the conspiracy was formed more than three years prior to the indictment, and acts in pursuance thereof have been done, both prior to and within the three years, prosecution is not barred, for the conspiracy may be a continuing offense, and it may be alleged and proven that it was continued in force and operation to a time within the statutory period of limitation. It was so held by this court in Hedderly v. United States, 193 Fed. 561, 569, 114 C. C. A. 227, in accordance with the very decided weight of authority, and that rule has been finally approved and settled by the decision in United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168.

We find no error for which the judgment should be reversed. It is, accordingly, affirmed.

ROSS, Circuit Judge (dissenting). The indictment against the plaintiffs in error was based on section 5440 of the Revised Statutes as amended May 17, 1879 (21 Stats. p. 4), which reads:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

Another provision of the Revised Statutes requires prosecution of such offenses to be commenced within three years. The indictment was filed August 12, 1911; objection to its sufficiency, as well as to the time of its presentation, being appropriately taken by the plaintiffs in error.

In respect to the crime denounced by section 5440, the Supreme Court, in the late case of Hyde v. United States, 225 U. S. 347, at page

357, 32 Sup. Ct. 793, at page 798 (56 L. Ed. 1114, Ann. Cas. 1914A, 614), which was a prosecution based upon the same statute, said:

"It is contended by the defendants that the conspiracy—the union in an unlawful purpose—constitutes the crime, and that the requirement of an overt act does not give the offense criminal quality or extent, but that the provision of the statute in regard to such act merely affords an opportunity to withdraw from the design without incurring its criminality (called in the cases a locus penitentiæ). The following, among other cases, are cited in support of this view: United States v. Britton, 108 U. S. 199, 204 [2 Sup. Ct. 531, 27 L. Ed. 698]; Pettibone v. United States, 148 U. S. 197, 203 [13 Sup. Ct. 542, 37 L. Ed. 419]; Dealy v. United States, 152 U. S. 539, 547 [14 Sup. Ct. 680, 38 L. Ed. 545]; Bannon v. United States, 156 U. S. 464–468–469 [15 Sup. Ct. 467, 39 L. Ed. 494]; and the opinion of this court when this case was here before [Hyde v. Shine], 199 U. S. 62–76 [25 Sup. Ct. 760, 50 L. Ed. 90].

"It must be conceded at the outset that there is language in those cases that, considered by itself, justifies the contention based upon them. In the United States v. Britton, for instance—and the language of the case is resorted to for the genesis of the doctrine and makes strongest for the contention—Mr. Justice Woods, speaking for the court, said: 'The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a locus penitentiæ, so that before the act is done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows as a rule of criminal pleading that in an indictment for conspiracy under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy. Reg. v. King, 7 Q. B. 782; Commonwealth v. Shedd, 7 Cush. [Mass.] 514.'

"The case was followed in Pettibone v. United States to the effect 'that the conspiracy must be sufficiently charged, and cannot be aided by averments of acts done by any one or more of the conspirators in furthering the object of the conspiracy.'

"In Dealy v. United States it is said that: 'The gist of the offense is the conspiracy. * * * Hence, if the conspiracy was entered into within the limits of the United States and the jurisdiction of the court, the crime was then complete, and the subsequent overt act in pursuance thereof may have been done anywhere.'

"Indeed, it must be said that the cases abound with statements that the conspiracy is the 'gist' of the offense or the 'gravamen' of it, and we realize the strength of the argument based upon them. But we think the argument insists too exactly on the ancient law of conspiracy, and does not give effect to the change made in it by section 5440, supra. It is true that the conspiracy, the unlawful combination, has been said to be the crime, and that at common law it was not necessary to aver or prove an overt act; but section 5440 has gone beyond such rigid abstraction and prescribes, as necessary to the offense, not only the unlawful conspiracy, but that one or more of the parties must do an 'act to effect' its object, and provides that when such an act is done 'all the parties to such conspiracy' become liable. Interpreting the provision, it was decided in Hyde v. Shine, 199 U. S. 62, 76 [25 Sup. Ct. 760, 50 L. Ed. 90], that an overt act is necessary to complete the offense. And so it was said in United States v. Hirsch, 100 U. S. 33 [25 L. Ed. 539], recognizing that while the combination of minds in an unlawful purpose was the foundation of the offense, an overt act was necessary to complete it. It seems like a contradiction to say that a thing is necessary to complete another thing, and yet that other thing is complete without it. It seems like a paradox to say that anything, to quote the Solicitor General, 'can be a crime of which no court can take cognizance.' The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something

more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy and all incur guilt by it, or rather complete their guilt by it, consummating a crime by it cognizable then by the judicial tribunals, such tribunals only then acquiring jurisdiction."

It is there, as I understand it, in effect held, contrary to previous decisions of that court as well as of other federal courts, that in order to constitute a crime under the provisions of section 5440 of the Revised Statutes, an overt act or acts is essential. That being so, it cannot admit of doubt that the indictment must allege such overt act or acts, for it is a cardinal rule of criminal pleading that everything made essential to constitute the crime must be alleged.

Turning to the indictment, we find what the conspirators agreed to do thus stated:

"That on or about the 1st day of April, in the year of our Lord one thousand nine hundred and eight, at Seattle, in the county of King, state of Washington, and within the jurisdiction of this court, one Charles E. Houston, late of said county of King, and one John H. Bullock, formerly of said county of King, but late of the county of Multnomah, in the state of Oregon, and one D. H. Jarvis (now deceased) and others to the grand jury unknown, did willfully, knowingly, and unlawfully and feloniously conspire, combine, confederate and agree together to defraud the United States of America of divers large sums of money, and further to defraud the said United States of its legal remedies to recover the moneys of which it was to be defrauded as aforesaid, and further to defraud and deceive the officers of the said United States having authority in the premises in the discharge of their official duties with reference to the several transactions hereinbefore set forth, and further to defraud the said United States of the governmental and other benefits that would have resulted from honest and competitive bids and proposals to contract for the furnishing and sale to said United States of coal as hereinafter set forth.

"The subject-matter of said unlawful conspiracy, the objects thereof, and the means by which said objects were to be effected are as follows, to wit:

"On or about the 10th day of March, A. D. 1908, the said United States, acting through the Chief Quartermaster for the Department of the Columbia of the United States Army, published and circulated an advertisement inviting bids and proposals to contract for the furnishing and sale to said United States of certain large quantities of coal, which the said United States desired to purchase for governmental use during the fiscal year commencing July 1, 1908, and ending June 30, 1909, at those certain military posts known as Fort Davis, Fort St. Michael and Fort Liscum, all situated in the District of Alaska, which said bids and proposals to contract were to be submitted to the said Chief Quartermaster for the Department of the Columbia on the 10th day of April, A. D. 1908.

"The principal object of said unlawful conspiracy was to induce the said United States, acting through its duly authorized officers, to award and let contracts for the purchase of said coal, and to purchase and pay for said coal, at grossly exorbitant and fraudulent prices, whereby the said United States should be defrauded of large sums of money for the use and benefit of said conspirators, or some of them, or certain corporations then and there represented by said conspirators respectively; which said object was to be effected and consummated by means of collusive, fraudulent and dishonest bids and proposals to contract for the furnishing of said coal, which said bids and proposals to contract should be ostensibly competitive, but in fact collusive, dishonest and noncompetitive and for grossly exorbitant prices to be secretly agreed upon by said conspirators and communicated to one another prior to the making of said bids and proposals to contract.

"It was also one of the objects of said unlawful conspiracy, that after the said United States should have been defrauded in the manner and by the

·means hereinbefore set forth, the true facts in the premises should be concealed from the said United States, whereby the said United States should ·be defrauded of its legal remedies to recover the moneys of which it should have been defrauded as aforesaid, and should be defrauded of all legal re- ·dress in the premises, which said last named object of said unlawful conspiracy was to be effected and consummated by means of false, fraudulent, fictitious and collusive checks, vouchers, and entries in books of account re- ·lating to the disbursement and use by said conspirators of the moneys of which the United States was to be defrauded as aforesaid.

"Which said unlawful conspiracy has at all times since said first day of April, A. D. 1908, been furthered and continued in force by each of said con-: spirators, except as to said D. H. Jarvis since the date of his decease on or about June 22, A. D. 1911."

Notwithstanding the foregoing averments in respect to the alleged ·agreement of the alleged conspirators, the indictment contains not one line or word to the effect that the said alleged conspirators or either of them directly or indirectly ever made any bid or proposal through the ·Chief Quartermaster of the United States Army of the Department of the Columbia, or otherwise, for the furnishing or sale to the United States of any coal which it desired to purchase for governmental use ·during the fiscal year commencing July 1, 1908, and ending June 30, 1909, at the military posts known as Ft. Davis, Ft. St. Michael, and Ft. Liscum, or for any other purpose, or at all; and as a necessary consequence the indictment contains no charge that the said conspirators or either of them directly or indirectly made to the United States through ·its said Quartermaster or otherwise, any collusive, fraudulent, or dishonest bid or proposal to contract for the furnishing of any coal, or that they or either of them ever made to the United States through its Quartermaster or otherwise any bid or proposal of any nature or character. Yet, as has been seen, it is expressly alleged that the subject-matter of the alleged conspiracy, its objects, and the means by which those objects were to be effected, consisted in inducing the United States through its authorized officers to award and let contracts for the purchase of certain coal for which it had previously asked bids through its Chief Quartermaster for the Department of the Columbia, at grossly exorbitant and fraudulent prices, whereby the government would be defrauded of large sums of money for the benefit of the alleged conspirators or those for whom they were acting, all of which was to be effected and consummated by means of collusive, fraudulent, and dishonest bids and proposals to contract for the furnishing of the coal, at grossly exorbitant prices to be secretly agreed upon by the alleged conspirators prior to the making of such bids and proposals.

The indictment does charge that, after the formation of the alleged unlawful conspiracy, and during its continuance, and to effect its object:

"The said John H. Bullock, on, to wit, the 13th day of August, A. D. 1908, ·at Vancouver in said Western District of Washington and within the juris diction of this court, did knowingly, unlawfully and corruptly induce, persuade and cause one John E. Baxter as Quartermaster of the United States Army to issue, and the said John E. Baxter did issue a certain check or warrant drawn upon the First National Bank of Portland, Oregon, bearing date of said 13th day of August, 1908, in favor of 'John J. Sesnon Co.' for the

sum of thirty-nine thousand one hundred and sixty-three and 50/100 ($39,-163.50) dollars, and which said check or warrant was subscribed by said John E. Baxter as Quarter (master) of the United States Army, and which said check or warrant was for funds and money of the said United States then and there on deposit in said First National Bank of Portland, Oregon." And

"That after the formation of said unlawful conspiracy and during the continuance thereof, and to effect the object thereof, the said John H. Bullock, on, to wit, the 1st day of September, A. D. 1908, at Seattle in said Western District of Washington, and within the jurisdiction of this court, did knowingly, unlawfully. and corruptly induce, persuade and cause one Frank A. Kane, as agent of said John J. Sesnon Co., to, and said Frank A. Kane then and there did endorse and negotiate said check or warrant last herein described, and which said check or warrant was thereafter and on the 2d day of September, 1908, duly paid by said First National Bank of Portland, Oregon, out of the aforesaid funds of said United States." And

"That after the formation of said unlawful conspiracy and during the continuance thereof, and to effect the object thereof, the said John H. Bullock, on, to wit, the 13th day of August, A. D. 1908, at Vancouver, in said Western District of Washington and within the jurisdiction of this court, did knowingly, unlawfully and corruptly induce, persuade and cause one John E. Baxter, as Quartermaster of the United States Army, to, and the said John E. Baxter did issue a certain check or warrant drawn upon the First National Bank of Portland, Oregon, bearing date the said 13th day of August, 1908, in favor of 'John J. Sesnon Co.' for the sum of fifty-three thousand eight hundred and seventy-eight and 50/100 ($53,878.50) dollars, and which said check or warrant was subscribed by said John E. Baxter as Quartermaster of the United States Army, and which said check or warrant was for funds and money of the said United States then and there on deposit in said First National Bank of Portland, Oregon." And

"That after the formation of said unlawful conspiracy and during the continuance thereof, and to effect the object thereof, the said John H. Bullock, on, to wit, the 1st day of September, A. D. 1908, at Seattle, in said Western District of Washington, and within the jurisdiction of this court, did knowingly, unlawfully, and corruptly induce, persuade and cause one Frank A. Kane, as agent of said John J. Sesnon Co., to, and said Frank A. Kane then and there did indorse and negotiate said check or warrant last herein described, and which said check or warrant was thereafter and on the 2d day of September, 1908, duly paid by said First National Bank of Portland, Oregon, out of the aforesaid funds of said United States."

But the indictment does not charge that the check or warrant therein referred to had any connection with any bid or proposal by the alleged conspirators for the sale to or purchase by the United States of any coal at exorbitant prices by means of pretended and fraudulent competitive bids, or otherwise. It will not do to indulge in any inferences in respect to that matter in considering the question of the sufficiency of the indictment, for, as already said, a cardinal rule in criminal proceedings is that the indictment must state every ultimate fact made essential by law to the constitution of the crime denounced. The present indictment was undoubtedly drawn with the manifest purpose, as I think, of avoiding the bar of the statute of limitations; for, as has been shown, notwithstanding the fact that it makes no mention whatever of the making of any bid or proposal by or on behalf of the alleged conspirators or either of them for furnishing and selling to the government any coal in response to the advertisement of its Quartermaster, or otherwise, yet on the trial the government introduced evidence not only that the defendants did make such bids for the furnishing and sale to it of the coal advertised for, at exorbitant prices,

but that such bids and proposals, while nominally competitive, were really fraudulent and made pursuant to the agreement of the defendants thus to defraud the United States. And such proof was deemed by the jury so conclusive as to result in a verdict of guilty against the appellants. To such proof they objected upon the ground, among other grounds, that it was barred by the three-year statute of limitations. The government deemed it necessary to prove that the alleged conspirators did make the collusive and fraudulent bids and proposals in response to the advertisement of the Quartermaster, as it undoubtedly was, for the reason that not only was the making of such collusive and fraudulent bids and proposals one of the essential elements of the crime undertaken to be charged, but, according to the express declaration of the indictment itself, "the principal object" of it. It being necessary to prove the fact of the making of such collusive and fraudulent bids and proposals, it was, upon well-settled principles, necessary to allege the making of them. To have done so, however, the indictment would have shown upon its face that the conspiracy alleged to have been entered into was consummated more than three years before the filing of the indictment, and, consequently, barred by the statute of limitations.

In one of the briefs filed by counsel on behalf of the government, it is said:

"The principal objection urged against the indictment in the present case is that the interposing of two or more bids was an indispensable step in the execution of the conspiracy, without which the overt acts alleged in the indictment could not have tended to effect the object of the conspiracy; · this objection being based upon the general proposition that an indictment for conspiracy under section 5440, R. S., must allege the commission of all indispensable overt acts from the inception of the conspiracy down to the last overt act alleged in the indictment.

"The decision of this court in Chaplin v. United States, 193 Fed. 879, 114 C. C. A. 93, is conclusive upon this proposition. The same question was raised, considered, and decided; and the decision was squarely against the contention raised there, and which is renewed in the present case. * * * The contention urged in the Chaplin Case was identical in principle with the contention urged in the present case."

How mistaken counsel are in this contention will be readily seen by reference to the case of Chaplin v. United States and remembering the change wrought in the law in respect to the crime defined by section 5440 of the Revised Statutes by the decision of the Supreme Court in the case of Hyde v. United States, supra. The Chaplin Case arose under the Desert Land Act, one of the provisions of which declares:

"That it shall be lawful for any citizen of the United States, or any person of requisite age who may be entitled to become a citizen, and who has filed his declaration to become such, and upon payment of twenty-five cents per acre to file a declaration under oath with the register and receiver of the land district in which any desert land is situated, that he intends to reclaim a tract of desert land. * * *"

The court in its opinion said (193 Fed. 881, 114 C. C. A. 95):

"The question presented to this court is whether the indictment charges the commission of a crime. The contention of the plaintiffs in error is that, inasmuch as an entryman of land under the desert land acts has the right to assign his entry as soon as it is made, the plaintiffs in error committed no

crime in conspiring to induce an entryman to make an entry when he had the actual present intention to assign his right to another; that the entryman has the right to make an entry with the intention to assign; that the land office has no right to exact from him an affidavit which renounces such right; that, if it does exact such an affidavit, the entryman does not commit perjury in making it, and the entry which he makes is legal, no matter what his intention may be."

In considering the validity of the indictment in that case, which was for alleged conspiracy, the court said:

"It is contended that the indictment is fatally defective for failure to allege that the defendants accused therein ever caused any fraudulent entries to be made, or ever took any steps or did any act to that end. But it was not necessary to allege that such entries were in fact ever made. The offense charged was a conspiracy to defraud the United States. The nature and object of the conspiracy, and the means whereby the conspirators intended to carry out their scheme, were set forth. The offense was complete when the unlawful conspiracy was formed and the plans were adopted. There remained, however, a locus penitentiæ until something more was done. Instead of abandoning their conspiracy, the indictment alleges that the conspirators performed certain overt acts. In the counts on which the plaintiffs in error were found guilty, they were charged with making certain false and fraudulent affidavits of expenditures which were sworn to have been made on desert land entries within the first year after the date thereof, which affidavits were set forth and were alleged to have been sworn to before the receiver of the land office, and they contained the jurat and the signature of such officer. These overt acts were within the scope of the conspiracy as charged, and they tended to accomplish its object. In United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698, it was said: 'The offense charged in the counts of this indictment is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone.'"

As will be seen, the court there held that "the offense was complete when the unlawful conspiracy was formed and the plans were adopted." Such was undoubtedly the law at the time of the rendition of that decision; but, as has been seen from the decision of the Supreme Court in the case of Hyde v. United States, supra, such is no longer the law.

Another consideration which renders the decision of this court in the case of Chaplin v. United States wholly inapplicable to the present case is that neither of the overt acts alleged in the indictment in the present case had, in so far as the indictment shows, any connection whatever with the making by the alleged conspirators of any bid or proposal of any character for the furnishing and selling to the government of any coal pursuant to the advertisement of its Quartermaster, or otherwise.

For the reasons stated I am of the opinion that the judgment should be reversed and the cause remanded, with directions to the court below to sustain the demurrer to the indictment.