[Civil No. 3166. Filed July 2, 1932.]

[12 Pac. (2d) 781.]

AMANDUS PETERS and EDNA L. PETERS, Husband and Wife, Appellants, v. AUGUSTE THOR and FRED THOR, Her Husband, Appellees.

Messrs. Swenson & Swenson, for Appellants.

Mr. G. W. Shute and Mr. Charles Bernstein, for Appellees.

McALISTER, C. J.—Plaintiffs, Auguste Thor and Fred Thor, her husband, brought suit on a promissory note executed in favor of the former by Edna L. Peters and her husband, Amandus Peters. The trial resulted in a judgment in favor of the plaintiffs in the amount asked for and from it and the order denying their motion for a new trial defendants appeal.

The note on which the suit is based reads as follows:

"$3660.                     Casa Grande, Arizona,
                            "December 15th, 1925.
"On or before three years after date, without grace, I, we, or either of us promise to pay to the order of Auguste Thor, at the First National Bank of Casa Grande, Arizona, Thirty-Six Hundred Sixty # Dollars in lawful money of the United States at the present standard with interest at the rate of 6 per cent per annum from date until paid, for value received, interest payable annually.

"We further promise that in case this note is not paid at maturity and is placed in the hands of an attorney for collection, to pay $—— Attorney's fees in addition to the amount of principal and interest due thereon.

"We agree that after maturity this note may be extended from time to time by any one or more of us, without the knowledge or consent of any of the others of us, and after such extension the liability of all parties shall remain as if no extension had been made. All makers and endorsers of this note waive notice and protest.

"Payable at the office of The First National Bank of Casa Grande, Arizona.

"EDNA L. PETERS,
"AMANDUS PETERS."

On its back is this indorsement: "Interest paid to maturity. Auguste Thor."

This note is a renewal of one dated February 23, 1921, which came into existence as a result of a transaction between Mrs. Thor and Mrs. Peters relative to the relinquishment by the former of an entry of land she had made some eleven years before but upon which she had never made final proof. It appears that she had filed on a desert claim of 240 acres near Casa Grande in April, 1910, and in June, 1919, had been ordered by the United States Land Office to make final proof by April 1, 1921, but realizing that she would be unable to do this on that date entered into an agreement on February 23, 1921, with Edna Peters, who was then and for many years had been her neighbor in the Casa Grande Valley, by which she relinquished her entry of the land in question and Mrs. Peters immediately filed thereon. This agreement was reduced to writing and is in the following language:

"Feb. 23, 1921.

"Mrs. Edna L. Peters hereby acknowledges receipt of relinquishment to the SW¼ of Sec. 8—6—7 also N½ of NW¼ Sec. 17—6—7 and hereby places in The First National Bank of Casa Grande note to the amount of $3,660, in payment of same.

"Note to remain in escrow for three years or until such time as cash for note is delivered to Auguste Thor.

"If above note is not paid before three years then Mrs. Edna L. Peters agrees to return relinquishment to Auguste Thor.

"If Mrs. Edna L. Peters returns relinquishment to Auguste Thor, Mrs. Thor agrees to pay all three year assessments *done* on above pieces of land.

"EDNA L. PETERS,
"AUGUSTE THOR."

Indorsed on it are these three extensions signed by Mrs. Thor and Mrs. Peters: The first, from February 23, 1924, to December 20, 1924; the second, from December 20, 1924, to December 15, 1925; and, third, from December 15, 1925, to December 15, 1928.

The day the agreement was signed, February 23, 1921, and as a part of the same transaction the note referred to therein was also executed, and both the note and the agreement were placed in escrow in the First National Bank of Casa Grande. From the bank where both instruments were executed and placed in escrow the parties went to the office of the land commissioner in Casa Grande, a Mr. Brown, and there the plaintiff, Auguste Thor, delivered to him her relinquishment, and defendant, Edna L. Peters, immediately filled out her application for the land and both the relinquishment and the application were forwarded to the Land Office in Phoenix where they were filed the following day, February 24, 1921. The plaintiff, Fred Thor, paid the filing fee of sixty dollars for Mrs. Peters' application. The Land Office, however, did not allow it until December 20, 1921, for the reason that two contests against Mrs. Thor's entry of the land, then pending, were not disposed of until a few days prior to that time, one of them having been filed on December 29, 1920, and the other on February 4, 1921.

Following the allowance of her application the defendants went into possession of the land, did the annual assessment work required by law amounting to $240 a year, or a total of $720 for 1922–23–24, and some time thereafter applied for an extension of three years in which to make final proof, but eight months later, that is, on August 16, 1926, no action on the application having then been taken, traded the property to Graceley Brothers for seven acres in the Salt River Valley on which there was an encumbrance of $1,500, and on the same day relinquished her entry of the 240 acres. On December 16, 1928, the day following the expiration of the three years mentioned in the note and the agreement, plaintiffs went to the bank and obtained the note without defendants' knowledge, and within a few days thereafter filed this suit. In their complaint they set up the usual allegations of an action on a promissory note, and the answer, after admitting its execution, denies delivery to plaintiffs, pleads accord and satisfaction of the original agreement, estoppel, and illegality of the transaction of which the note was a part due to the fact that it had these three purposes: First, the substitution of a "dummy" entryman for the plaintiff, Auguste Thor, on the records in the United States Land Office; second, speculation in her relinquishment; and, third, the evasion of the order of the United States Land Office with reference to her desert entry.

At the close of the testimony both parties moved for a directed verdict and the court, holding that sufficient defense to the note had not been shown by appellants, directed the jury to return a verdict in favor of appellees for the amount thereof. It is from the judgment entered thereon this appeal is taken, the defendants contending that under the facts their motion should have been granted or at best that the jury should have been permitted to pass on the matter.

Appellants have assigned a number of errors but treat them under these four propositions, to wit: First, a delivery of the note was not authorized; second, a *prima facie* case of accord and satisfaction of the original agreement was established; third, appellees were estopped by their conduct from claiming under the note; and, fourth, the agreement was an illegal one in all particulars.

Was the delivery of the note to Mrs. Thor by the bank, the escrow-holder, authorized? The position of appellants is that the transaction between the parties did not amount to a sale of the relinquishment but was in its nature a bailment thereof and the substance of the testimony given in their behalf and relied on by them to support this contention is that appellees, who had held the land eleven years without making final proof and who realized that they could not make it within the time set by the government and were for this reason going to lose the land, asked appellant, Edna Peters, to file on it and hold the entry three years as a favor to them, the appellees. Appellant at first declined but after several visits to her home by appellees agreed to do this and also to return the relinquishment to them at the end of the three years, provided she had not in the meantime sold it at a profit. Appellees agreed to take care of all expenses including the filing fee of $60, to pay appellant upon return of the relinquishment $720 for performing the annual work required by the law and to permit appellant to sell the relinquishment at a profit if an opportunity to do so during this time arose. It was the day following the last visit of appellees that they and appellants went to the bank in Casa Grande where the parties executed the agreement and note, both of which appellees had had drawn up before appellants reached there, and placed them in escrow.

The three extensions indorsed on the agreement were agreed to and executed at the request of ap-

pellees and were ready for Mrs. Peters' signature when she went to the bank to sign them. The last one, from December 15, 1925, to December 15, 1928, was executed in anticipation of an application to be made to the Land Office for an extension of three years' time in which to make final proof, a privilege allowed by statute upon a proper showing. This application was later made and appellees paid the fee therefor.

The position of appellees upon the other hand is that appellants purchased the relinquishment outright and gave their note for $3,660 as a consideration therefor. The testimony in their behalf is in substance that appellants answered their advertisement published in a newspaper offering to sell their relinquishment by speaking to them about it on the streets of Casa Grande and that following this conversation appellees made several visits to the home of appellants, the last of which resulted in an agreement binding the former to sell and the latter to buy the relinquishment for $3,660 and in the execution by the parties on the following day at the bank of an agreement to this effect together with the note.

In directing a verdict for appellees the court evidently took the view that the transaction properly construed constituted a sale and not merely an agreement to hold the land as a favor to appellees and that the bank was authorized to deliver the note to them in case appellants failed to pay it before three years. It occurs to us, however, that the agreement, and especially when considered in connection with the testimony in behalf of appellants, which must be taken as true for purposes of the motion to direct the verdict against them, is not so clear in meaning that only this construction may as a matter of law be given it. Such an interpretation might perhaps be required if it contained only the first two paragraphs, but it must be considered as a whole and since it specifically provides in the third paragraph what is

to be done in case the note is not paid before three years, namely, that appellee shall return the relinquishment, not that the bank shall deliver the note, to Mrs. Thor, it does not follow necessarily that the transaction amounted in law to an absolute sale of the relinquishment. Nowhere does the agreement expressly authorize the escrow-holder to turn the note over to Mrs. Thor if it is not paid within three years, and the fact that it definitely provides that the relinquishment shall be returned to her in that event necessarily precludes implied authority to that effect, for certainly Mrs. Thor was not entitled to both the relinquishment and the note. What the escrow-holder should have done in case appellants neither returned the relinquishment nor paid the note seems not to have been provided for, and in view of the testimony that they were merely to hold the relinquishment as a favor to appellees and return it to them if they were unable to sell it at a profit before three years, we are of the view that the jury might well have concluded that there was no sale and that a delivery of the note to Mrs. Thor was not contemplated. In determining whether it was merely an accommodation to appellees or a sale the jury might properly have considered among others the following questions: First, if it was a sale why was the relinquishment not delivered to appellant instead of the Land Office since, in that event, it was immaterial to appellees whether appellant filed on the land or not? Second, why was the note placed in escrow instead of being delivered to appellees? Third, why did appellant, Edna L. Peters, obligate herself to return the relinquishment and appellee, Auguste Thor, agree to pay all expenses including the annual work on the land in the event the note was not paid before three years? Fourth, why did appellees request all extensions of the agreement, fix the terms thereof so they would end at a time which gave appellees five

days in which to refile on the land? And, fifth, why did the note, which was dated February 22, 1921, and which passed through two extensions, or a period of eight years, bear no interest whatever?

Appellees take the further position, however, that the transaction was not merely a sale but that appellants so treated it when they sold or traded the relinquishment in August, 1926, to Graceley Brothers and thus placed it beyond their power to live up to their agreement to return the relinquishment to Mrs. Thor. The evidence of appellants on this phase of the case, however, is that since no action was taken within eight months, or by August 16, 1926, on Mrs. Peters' application for three years' additional time in which to make final proof, she traded the relinquishment on that date for an equity in the seven acres of land which was valued at $2,000, but that before doing so they asked appellees what to do about the trade and at the same time offered them the choice between taking the equity and agreeing to pay appellants $1,000 for the annual work done on the land by them and the commission of the real estate agent which appellants owed, and permitting appellants to take the equity and give appellees their promise to pay $1,000 when they could. Each trusted the other fully at the time but neither had any money, so appellee said to appellant, "Go ahead and make the deal," and after learning that the land was in crop decided to take appellants' promise to pay them $1,000. Some time later it appears appellee, Fred Thor, asked appellant, Amandus Peters, to act as an arbitrator in a dispute between him and his tenant and he did not like the decision, so the friendly relations between them ceased and appellees on December 16, 1928, obtained possession of the note at the bank and a few days later instituted the suit. If they did advise appellants to trade the relinquishment for the $2,000 equity and accepted appellants' promise to pay them $1,000

of this, it appears to us that the jury would have been justified in concluding that it was intended by the parties that this arrangement was a substitute for the original agreement; in other words, that the plea of accord and satisfaction had been sustained. It is true there was no specific mention of the note in the conversation between them relating to the advisability of trading the relinquishment for the $2,000 equity, yet there is no theory on which the trade as testified to by appellants could have been agreed to by the parties other than the fact that the note was satisfied thereby.

The fourth proposition is that the transaction, in the light of the testimony in behalf of appellants, was an illegal one in all its parts and cannot be enforced. We think this is likewise true, for if, as appellants contend, Mrs. Peters filed on the land as an accommodation to Mrs. Thor, the intention being that she would later return the relinquishment, or what is the same thing, deliver it to the Land Office so that Mrs. Thor could again file on it, it might properly be said that the purpose of the transaction was to prevent the cancellation of her entry by enabling her through a "dummy" entryman to continue to hold the land without making final proof by April 1, 1921, as directed in the order of June 3, 1919, and that it was, therefore, not *bona fide* but clearly illegal and unenforceable. In *Chaplin* v. *United States,* (C. C. A.) 193 Fed. 879, the court said:

"It was clearly not the intention of Congress to offer the desert lands to entry to persons who were to be dummies for others, or to persons who had no intention to occupy the land for the purposes for which it was offered, but whose intention was to hold it temporarily merely for the purposes of speculation or for the benefit of some other person."

It is, of course, true upon the other hand that if the transaction was, as appellees contend, a sale in fact, it

was not illegal and the relinquishment constituted a good consideration for the note. In 50 C. J. 1132 is found this statement:

"A contract by an entryman to relinquish his claim to and abandon the land and to cancel his entry at the land office in order that the other party may enter the land and ultimately secure a patent therefor is not illegal, and constitutes a good consideration for the other party's note for or promise to pay the agreed price."

We think it clear under the evidence that the jury might have taken the view that the transaction between the parties was in fact an agreement by which appellant, Edna Peters, agreed to file on and hold the land merely as an accommodation to appellee; hence, a directed verdict for appellees should have been denied. The judgment is reversed and the case remanded for a new trial.

ROSS and LOCKWOOD, JJ., concur.